Filed 11/19/13  In re F.K. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re F.K., et al., Persons Coming Under the Juvenile Court Law. | B246184 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GEORGE K.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK93686) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sherri S. Sobel, Juvenile Court Referee.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel, for Plaintiff and Respondent.

George K., father of nine-year-old F.K., appeals from the judgment of the juvenile court. He challenges the court's jurisdictional findings that father's drug use and the presence of weapons and illicit drugs around the home endangered F.'s health and safety. Father also argues that there was insufficient evidence to support the court's order removing F. from his custody. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 2012, the Department received a referral alleging that mother had physically abused F. by grabbing her neck. The Department investigated the referral and found it to be "inconclusive for physical abuse." However, while conducting a home visit in April 2012, the Department's social worker noticed "a little baggie with white stuff in it" on father's arm while he was sitting on the couch. Father acknowledged that the "baggie" appeared to contain drugs, and suggested that it belonged to a guest who had sat on the couch the day before. When law enforcement came to investigate, father informed the deputies that he had flushed the substance down the toilet.

On May 23, 2012, the Los Angeles County Sheriff's Department executed a search warrant at mother and father's home to investigate a kidnapping. The police had received a report that father had held an individual captive in his garage and had tortured him. According to the police report, father was a "known drug user and dealer."[1] The victim reported that father had hit him with a gun, poured acetone over

---

[1]    Father's criminal history includes three convictions for possession of a controlled substance between 2001 and 2005.

his head, had threatened to kill him and his pregnant fiancée, and had carved the word "lame" across his abdomen with a heated knife while the victim's hands were tied.

When law enforcement searched mother and father's home, they found three known gang members in the garage, as well as two knives used in connection with the torture of the kidnapping victim, a hypodermic needle commonly used to administer heroin, and gang tagging and graffiti associated with the Rivera Trece gang on the walls of the garage. Directly outside of the garage were a methamphetamine pipe and a marijuana pipe. The officers also found a handgun in the driveway that was allegedly used in connection with the torture of the kidnapping victim.

Father was arrested. After his arrest, father admitted to officers that he worked for the gang, that the kidnapping victim had been held captive in his garage, that father was present during the torturing of the victim, and that he and other gang members "do dope and get high in the garage." He also acknowledged that F. often came into the garage.

The Department's social worker interviewed each member of the household. Mother said that father was "always in the garage," that she never went into the garage, and that she did not know what father did in there. However, mother acknowledged that she suspected that father was engaged in illegal activity in the garage. Mother knew that father had a history of dealing and using drugs, and said that, after the police raid, she had found methamphetamine pipes in the garage. Based on this evidence, she believed that father was using drugs. F. said that she had gone into the garage three times but that she had not seen any drugs or needles in the house or garage. Maternal

grandmother, who also lived in the family home, stated that father had stopped eating with the family in mid-April, that he was "always" in the garage with "strange people," and that he demonstrated " 'very strange and odd behavior.' "

A petition was filed on May 29, 2012, alleging that father's involvement in a kidnapping, the presence of drug paraphernalia and weapons in the garage, and father's use of illicit drugs endangered F.'s physical health and safety, among other allegations.[2] The petition also alleged that mother's prior conviction of willful cruelty to children endangered F.[3]

On May 29, 2012, the court ordered that F. be detained from both mother and father. An amended petition was filed on July 13, 2012, which alleged that mother should have known that father was involved in gang activities in the garage and had failed to protect F. from such activity thereby putting her at risk of serious physical harm.[4]

On December 7, 2012, the court adjudicated the petition. At that time, father was in jail pending his criminal trial. Mother signed a waiver giving up her trial rights. Father's counsel argued that F. did not know what happened in the garage, that the drug

---

[2]     The petition also alleged that F.'s older brother was endangered by this activity, however, he is not a subject of this appeal.

[3]     Mother was convicted in 2004 for willful cruelty to children after she was arrested for driving under the influence of methamphetamine with her children in the car.

[4]     An amended petition was also filed on behalf of mother's third child who was born on June 24, 2012. It is unclear whether father is also challenging the court's orders with respect to this child, however, he has no standing to do so because he is only that child's alleged father. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 179.)

paraphernalia and weapons found in the garage did not belong to father, and that father did not use illicit drugs. The court found that father had endangered F. because a hand gun, drug pipes and a hypodermic needle were found within access of F., and because father had a history of illicit drug use and was currently using illicit drugs.[5] The court also sustained the allegation that mother had failed to protect F., and ordered reunification services for mother and father. Father timely appealed.

## *CONTENTIONS*

Father contends that there was insufficient evidence supporting the court's jurisdictional findings as to him and the court's order of removal.

## *DISCUSSION*

1.     *Standard of Review*

"In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and

---

[5]     The court refused to sustain the kidnapping and torture allegations on the grounds that father had "a right to be heard in criminal court." However, the court did not need a criminal conviction to make such findings but could have proceeded to sustain those allegations based on the evidence in the record. (See, e.g., *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 563 ["a failure to convict a parent of spousal abuse in a criminal proceeding—where the burden is a high one—'beyond a reasonable doubt'—does not establish that the parent did not commit spousal abuse for purposes of a proceeding where the burden is lower—'preponderance of the evidence'—as it is in dependency cases."])

credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

2. *There Is Substantial Evidence Supporting the Court's Jurisdictional Findings As to Father's Conduct*

Father only challenges the juvenile court's jurisdictional findings involving his conduct. However, the court also sustained the allegation that mother had endangered F. Therefore, father's challenge to the court's jurisdictional findings will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be permitted to assert jurisdiction over the minor because "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate. [Citations.]" (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.) In addition, the juvenile court may still assert personal jurisdiction over father and adjudicate his parental rights because "that jurisdiction is derivative of the court's jurisdiction over the minor and unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

However, father argues that the court should exercise its discretion to consider his challenge to the jurisdictional findings with respect to his conduct because those findings could raise barriers to his reunification with F. He claims that, absent the sustained allegation that he was using drugs and was responsible for the drug paraphernalia littered around the property, he would not have been ordered to undergo drug treatment and testing. The court retains discretion to consider alternative basis for taking jurisdiction. (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.)

6

Here, there was substantial evidence supporting the court's finding that father was responsible for the weapons and drug paraphernalia littered around the property. The handgun found in the driveway matched the description of the gun used by father during the kidnapping. Father also admitted that he used illicit drugs in the garage, and there was drug paraphernalia found in and directly outside of the garage.

Furthermore, there was substantial evidence that father was using illicit drugs and that this endangered F. (See *In re B.T.* (2011) 193 Cal.App.4th 685, 693-694 [holding that mother's substance abuse, absent a showing that it rendered mother incapable of caring for her children or posed a risk to them, was insufficient to support a finding that the children were at risk of harm under Welfare & Institutions Code[6] section 300, subdivision (b)].) As stated above, father admitted to use illicit drugs. Mother also believed father was using illicit drugs based on his history of drug use and dealing and the presence of methamphetamine pipes in the garage. Furthermore, all of the evidence suggested that father had withdrawn from family life in order to spend time doing drugs with other members of his gang in the garage. His drug use and criminal gang activities were intertwined and placed F. in close proximity to dangerous individuals, weapons and drugs.

Even if there was no substantial evidence supporting the jurisdictional findings based on father's conduct, at the disposition phase, the court is not limited to the content of the sustained petition but has broad discretion to fashion a dispositional order based on additional evidence. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183; *In re*

---

[6] All further statutory references are to the Welfare and Institutions Code.

*Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.) Here, there was substantial evidence in the record supporting the court's disposition order that father submit to drug treatment and testing: (1) father admitted that he used illicit drugs; (2) the police identified father as a well-known drug dealer and user; (3) mother believed father was using illicit drugs; (4) father had multiple criminal convictions for drug possession; (5) there was drug paraphernalia littered around the garage where father spent the majority of his time; and (6) the Department social worker had observed what father admitted looked like a bag of illicit drugs on father's person.

      3.     *Removal Was Proper*

Father contends that there was insufficient evidence supporting the court's order removing F. from his custody. Section 361, subdivision (c), the statute governing removal, prohibits the juvenile court from removing a minor child from the physical custody of the parent(s) with whom the child resided at the time the petition was initiated, "unless the juvenile court finds clear and convincing evidence . . . . [¶] [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Welf. & Inst. Code § 361, subd. (c)(1).)

"When the [juvenile court] makes findings by the elevated standard of clear and convincing evidence, the substantial evidence test remains the standard of review on appeal. [Citation.] The appellant has the burden of showing that there is no evidence of

8

a sufficiently substantial nature to support the order. [Citations.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 916.) Here, father failed to meet his burden. He argues only that removal was improper because his unavailability due to his incarceration was insufficient to compel removal, and a family friend was available to care for F.

Father cites to *In re Isayah C.* (2004) 118 Cal.App.4th 684 where the court held that the dependency court may consider placing a child with an incarcerated parent when that parent is able to make appropriate arrangements for the child's care during the parent's incarceration. However, in *Isayah C.,* the incarcerated parent was nonoffending, and, here, the court sustained allegations against father based on his illicit drug use and responsibility for a dangerous home environment.

Substantial evidence supports the finding that there would be a substantial danger to F.'s "physical health, safety, protection, or physical or emotional well-being" if she remained in father's custody: (1) father acknowledged taking part in the kidnapping and torture of a man in the garage; (2) there was evidence father was responsible for leaving a handgun, a hypodermic needle, a "baggie" of illicit drugs, and methamphetamine pipes on the property within F.'s access; and (3) there was evidence that father used illicit drugs and that it rendered him incapable of caring for F. (§ 361, subd. (c)(1).) Father's conduct had endangered F. and indicated that he would not make appropriate decisions to protect F. from future harm.

*DISPOSITION*

The judgment is affirmed.


*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


CROSKEY, J.

WE CONCUR:



KLEIN, P. J.



ALDRICH, J.