Filed 5/5/14  In re Jasmine L. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JASMINE L., a Person Coming Under the Juvenile Court Law. | B250500 (Los Angeles County Super. Ct. No. CK97505) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>PAUL L. et al.,<br><br>        Defendants and Appellants. | |

APPEALS from a judgment of the Superior Court of Los Angeles County. Anthony Trendacosta, Juvenile Court Referee.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant Paul L.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Carmen L.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Carmen L. (Mother) and Paul L. (Father) appeal from a juvenile court dependency disposition. Mother pleaded no contest to battering her daughter in August 2012, and the court sustained allegations that Father battered the child in January 2013. Both parents inflicted visible injuries on the child, but claim there is no basis for removing her from parental custody. The disposition order is amply supported by the evidence. We affirm.

## FACTS

Mother and Father are the parents of Jasmine L., born in 1998. In January 2013, police went to the family home, where yelling and screaming were heard. Father told officers that Mother asked him to physically discipline Jasmine because she was not listening to Mother. He spanked Jasmine on her "butt" and arm several times with an open hand. Jasmine's older sibling L.L. mentioned that Mother and Father hit her when she was younger. Jasmine said that whenever her parents "are upset with her, they resort to physical discipline," striking her "all over her body." In response, "Mother admitted that Jasmine's statement was true."

The incident was reported to the Department of Children and Family Services (DCFS). When reached by telephone, Father declined to "cooperate with the investigation because they have already been through this with DCFS." Later, Father stated that Jasmine was "disrespectful" so he spanked her with an open hand, denying that he would ever hurt her. Mother telephoned the social worker and said that "Jasmine just received a good spanking from her father" for being disrespectful.

Jasmine informed the social worker that Mother became angry when Jasmine failed to turn off her computer. At Mother's request, Father came from his nearby home to discipline Jasmine. He pushed her to the ground, injuring her arm, which was red and swollen. There were scratches on Jasmine's wrist and on both legs. While Jasmine was pinned to the floor, Father hit her on the behind. This is not the first time that Father has hit her.

In light of Jasmine's physical injuries, and the parents' history of child abuse accusations, Jasmine was detained. L. and Mother showed no emotion as Jasmine left. Jasmine is in therapy due to anger issues, and the family blames her for involving DCFS.

Jasmine said that "she wants to go home, but she just wants her father to leave her alone and stay away from her."

When informed that DCFS received two referrals regarding Jasmine, Father "stated that the allegations are false and he knows how to appropriately discipline his child." Father stopped speaking to the investigators when told that Jasmine had complained that her hair was pulled, her arm was twisted, and she was driven to Malibu to avoid anyone hearing her screams. The police discovered that Father was listed as a suspect in a crime report for child abuse involving Jasmine, from 2012.

Mother denied physically disciplining Jasmine. Mother fears that Jasmine communicates with strangers on the computer late at night. Jasmine cursed at Mother, who asked Father to come over and talk to Jasmine. When Father grabbed Jasmine to force her to her feet, the child scooted onto the floor and Father spanked her. When asked why Jasmine had marks and bruises from an August 2012 altercation with Mother, Mother replied that the police lie and "make up stuff"; however, the police have photos of Jasmine's injuries. Mother denied past encounters with DCFS, and had to be reminded that a social worker came to her home in August, September and October of 2012. Mother did not recall those incidents. Mother felt that Jasmine became defiant in 2011, when she received a computer. Mother has been too busy since 2011 to put parental controls on Jasmine's computer.

Jasmine advised the social worker that she has had physical altercations with her sister, brother, and Mother. In August, she and Mother had a fight and her sister L. "jumped in and helped her mother." A police report indicates that Mother ended up straddling Jasmine and banging her head against the tile floor of the bathroom several times; Mother then poured alcohol into the wounds on Jasmine's face, causing the child to scream with pain. Mother stuffed a towel in Jasmine's mouth to silence her. Jasmine's brother disapproved of a website Jasmine was visiting in November 2012, took her computer and smashed it, provoking a physical altercation. Jasmine is regularly disciplined, when Mother calls Father to come over and punish her. Jasmine does not

like Father "because he puts his women before his children." When Jasmine's siblings were younger, the police came to the house after Father hit the children.

The family has a history of child abuse referrals dating to 2002, which were deemed unfounded. Beginning in September 2012, DCFS began investigating whether Father physically abused Jasmine, noting that he "does smack the child around," and her anger toward him was growing. In October 2012, Jasmine reported being punched by her older brother.

DCFS filed a petition alleging that Father physically abused Jasmine on January 20, 2013, and on prior occasions in 2012, causing bruises, scratches and swelling; Mother physically abused Jasmine on August 26, 2012, and on other occasions in 2012, striking the child's head against the bathroom floor, inflicting bruising and scratches, and muffling the child's cries by putting a towel in her mouth; and Mother and Father caused serious physical harm and failed to protect the child.

The juvenile court found a prima facie case for detaining Jasmine. Mother and Father denied the allegations. DCFS was ordered to assess the child and her family, including her physical and psychological status. The parents were given monitored visitation. In February 2013, Jasmine was placed with a paternal aunt.

DCFS interviewed the family for the jurisdiction/disposition report. Mother stated that she and Jasmine have a good relationship, but Jasmine changed when she reached puberty. Jasmine began communicating with strangers on the computer, culminating in the events of the night of January 20, 2013, when Jasmine became angry and verbally abusive after Mother directed her to turn off the computer. L. called Father, who entered Jasmine's bedroom. Mother saw Jasmine on the floor and Father was spanking her while Jasmine fought him. The police came and handcuffed Father. Mother denied that Jasmine sustained any injuries in the altercation.

Jasmine expressed fear of Father during her interview with DCFS. She said, "He will get in my face and force me to talk to him. I just know that something will or is about to happen with him when he's angry. I think that we will end up in physical fights." Jasmine admitted that she was disrespectful to Mother when told to sign off the

Internet. L. telephoned Father, who arrived and threw Jasmine to the floor onto her stomach. When she tried to wiggle away, he began "to wrestle with me and we roll[ed] around on the floor and my mom is just standing there watching. The neighbors must have heard me and they probably called the police," who came and handcuffed Father.

The following day, Mother drove with Jasmine to pick up Father, though Jasmine was still upset about their fight and did not want to talk. In the back seat, Jasmine scrunched down onto the floor, and Father "started to push all his weight on me to make it uncomfortable. He told me that we were going to drive somewhere where this time nobody could hear me scream." When Jasmine tried to jump out of the car to get away from Father, he tied her shoes together. Then Mother and Father had an argument about Mother's failure to discipline Jasmine, and eventually they dropped Father off.

Jasmine met with a social worker at school, after which Father came to Jasmine's school and made embarrassing scenes. Jasmine was in tears and informed her tutor that she could not participate because Father was "out of control." Father had L. chase her, and Jasmine thought she was going to be punched. Father then began chasing Jasmine. She ran away and jumped into Mother's car. The argument continued in the car, so Jasmine tried to leave the car and L. tried to hit her. As Jasmine ran toward her school, Father pulled her into his car and told her "he didn't know if he likes me as a person anymore." Later that day, DCFS social workers showed up with police officers.

L. described Jasmine as being "out of control." L. opined that Father is "not the type of person to whoop any kids because he's a teacher and knows how to communicate with kids." Jasmine was defiant and cursing when Father arrived, so "he spanked her on her butt with his hand. She was [ ] screaming like if she was dying," and fought back. L. denied that she and her brother were hit, "maybe we got a spanking on our butt or a time out but that's it." L. denied witnessing any other physical altercations between Father and Jasmine. She believed that Jasmine was seeking attention the wrong way by communicating with strangers in online chat rooms. L. noted that Jasmine punched Mother in the face and kicked holes in the walls of the house, but acknowledged that

5

Jasmine's friend committed suicide in September 2012, and Jasmine felt guilty because she did not realize that her friend was being bullied.

Mother stated that she "was trying to subdue" Jasmine in August 2012 to prevent her from leaving the house at night, and "if I did scratch her it was on accident." She did not strike Jasmine's head against the floor. Mother does not know how Jasmine got the marks and bruises shown in police photographs taken that day, "but we were rolling around because she was trying to leave. I know that I shouldn't have held her down." Jasmine stated that she and Mother had a fight over a cell phone, resulting in scratches to Jasmine's face that "could have been from being dragged on the floor by my mom." Jasmine hid in the garage: when the family found her there, Father yelled and "smacked me in my head a couple of times."

Mother, who works at a insurance agency, is bonded with Jasmine despite the recent problems. Mother opined that "we need a break," but she wants to work on her parenting skills and have Jasmine come home. Jasmine enjoys living with her aunt and is content with the DCFS recommendation that she not return home. She is mature, articulate for her age, and is enrolled in a magnet program.

DCFS suggested that Mother and Father fail to control their anger when dealing with Jasmine's behavior, hitting her in the head, pulling her hair, and banging her head on the floor. Their actions caused physical injuries and pain, negatively impacted her emotional well-being, and led to a risk of severe injury because Jasmine attempted to jump from a moving car while trying to escape from her parents. DCFS recommended that Jasmine be removed from parental custody due to a substantial danger to her physical health and safety and to her emotional well-being.

Father expressed dismay at the allegations against him. He came to Mother's home after L. telephoned to say that Jasmine was cursing at Mother. He likes to talk to his children and "would rather them fear that I am going to do something rather than doing something to them." Jasmine displayed a bad attitude and a fighting stance toward Father, so "I turned her over on her stomach and she swung at me. . . . I gave her four

6

taps on her butt but she was trying to bite me and hit me in the face," then the police arrived. Father described the allegations as "ludicrous and beneath me" and "barbaric."

The following day, Jasmine became belligerent in the car, tried to kick gearshift lever and jump out of the vehicle when "we were simply going to talk." They were driving because he did not want the neighbors to call the police. Father described himself as good with children in his work as a substitute teacher. He did not witness the incident in which Mother allegedly struck Jasmine, hit her head on the bathroom floor and tried to muffle her with a towel, but he does not believe that Mother would harm Jasmine. The DCFS report noted that Father would have seen the injuries to Jasmine's face, as shown in police photographs, after Mother's fight with Jasmine.

The family participated in a Team Decision Meeting with DCFS. During the meeting, Jasmine described incidents of domestic violence between her parents and expressed fear that Mother will not protect her from Father if she is returned to parental custody. Mother allows Father to control situations, and Jasmine feels threatened by physical retaliation if she returns home. The child's caregiver reported that Mother and Father were having unmonitored telephone conversations with Jasmine, in violation of court order. Jasmine's therapist believes that the child copes with "bizarre family interactions" and fears that Father will remove Jasmine from a program geared toward helping the child with college readiness. Given the parents' repeated violations of court orders, and Jasmine's fear of Father, DCFS did not recommend voluntary services, or that the child be returned home. After Mother and Father attended a single session of therapy, Father terminated counseling, saying they did not need it.

The petition was adjudicated on May 8, 2013. Mother pleaded no contest to abusing Jasmine by hitting the child's face and striking her head against the bathroom floor, inflicting bruises and scratches on the child's face, chest and arms, and placing a towel in the child's mouth to prevent her from making any sound. On other occasions, Mother struck the child. The physical abuse was excessive and caused unreasonable pain and suffering, endangering the child's health and safety.

7

Father submitted stipulated testimony showing that on January 20, 2013, Jasmine and Mother had an altercation and Father was called to the home. He began to talk to Jasmine and attempted to pull her off the couch. When she fought back, he held her with both hands to restrain her while she was kicking, hitting and flailing. He spanked her with an open hand and let her off the floor when she calmed down. Her scratches and bruises resulted from her kicking and flailing on the floor. A few days later, Jasmine became upset and out of control, and tried to exit a moving vehicle. She also kicked the car out of gear. Father restrained Jasmine until she calmed down.

Jasmine's attorney stated that Mother was "looking into" services, though she had not started them; nevertheless, Jasmine felt that Mother "is taking responsibility" and wished to return to Mother, with monitored visitation for Father. Father continued to deny that he harmed Jasmine but acknowledged that the situation "could have possibly been handled differently." Father was willing to submit to the court's jurisdiction, based on Mother's no-contest plea, which created dependency jurisdiction. DCFS noted that Mother violated court orders preventing unmonitored visits, so her visits should remain monitored.

The court cited Jasmine's statements in DCFS reports expressing fear of Father. Rejecting the veracity of Father's stipulated testimony, the court sustained an allegation that Father has an anger management problem and "on two occasions engaged in combat with the child." He physically abused Jasmine on January 20, 2013, by pulling her to the ground, injuring her arms and legs. The combat caused the child excessive pain and suffering, endangers her health and safety, and places her at risk of harm.

The court ordered reunification services. While Jasmine played a part in the family's problems, the court said that "to put her back in the same position that she was, at this point, without [ ] services actually beginning in place and people getting insight, is asking that we just begin this cycle all over again. . . . As we can see from the facts, these are not one-time incidents. . . . [B]ut when Jasmine acts out, the parents react in inappropriate ways. And I have no guarantee, especially in light of the other factors, in terms of following court's orders, that she isn't going to continue to act out. And the

8

parents, without some insight into how they can better manage their responses to Jasmine, we're going to be right back here with another incident and another fight."

The court declared Jasmine a dependent of the court and found that "continuance in the home of the parents is contrary to the child's welfare and that a substantial danger exists to [her] physical health, safety, protection, physical and emotional well-being. There are no reasonable means in which the child may be protected without removal." It placed Jasmine in the custody of DCFS and ordered Father to complete an anger management program, a parenting class appropriate for teenagers and individual counseling to address case issues. Mother was ordered to complete a parenting class and individual counseling. Father, Mother and Jasmine were ordered to participate in conjoint family counseling. The parents were authorized to have monitored visits. Once the family began counseling, the court would consider liberalizing visitation.

## DISCUSSION

### 1. Appeal and Review

Father and Mother appeal from the disposition, which is an appealable order. (Welf. & Inst. Code, § 395; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.) We review the order to see if any substantial evidence, contradicted or uncontradicted, supports it. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

### 2. Sufficiency of the Evidence

Mother and Father contend that insufficient evidence underlies the juvenile court's determination that a substantial danger is posed to Jasmine's physical health, safety, protection or emotional well-being if the child is returned home, and that there is no reasonable means to protect her without removing her from Mother's custody. (Welf. & Inst. Code, § 361, subd. (c)(1).) They acknowledge that the juvenile court "'has broad discretion to determine what would best serve and protect the child's interest and to

fashion a dispositional order in accordance with this discretion.'" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532; *In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.) In making its determination, the court considers "a broad spectrum of evidence shedding light on the circumstances of the minor and his or her family." (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183.)

The record is replete with evidence that Mother and Father engaged in inappropriate and excessive disciplinary measures. In August 2012, Mother engaged in an altercation that ended with Mother straddling Jasmine on the floor and banging the child's head against the tiles. To top it off, Mother poured alcohol into the wounds she inflicted and muffled the child's screams of pain with a towel. Mother pleaded no contest to the dependency count arising from this incident of abuse. Standing alone, the August 2012 incident is sufficient reason to remove Jasmine from Mother's custody to protect the child from physical abuse.

Compounding the matter, Mother told the DCFS social worker that she does not physically discipline Jasmine. When the social worker asked why Jasmine had marks and bruises, Mother accused the police of lying, although the police took photos of Jasmine that reveal her injuries. Mother also denied any prior contacts with DCFS, although the family has a history of child abuse referrals dating to 2002, and social workers came to Mother's home in August, September and October 2012. Mother purportedly did not recall any of her prior dealings with DCFS. Mother's statements demonstrate a lack of candor about the family's history of domestic violence, and a lack of insight as to what constitutes excessive punishment amounting to child abuse.

Aggravating matters further, during the January 2013 incident, Father pinned Jasmine to the ground and struck her, resulting in a red and swollen arm and scratches on Jasmine's wrist and both legs. The juvenile court sustained allegations against Father arising from this incident, referring to it as "combat with the child." Mother minimized Jasmine's injuries by telling the social worker that it was "just . . . a good spanking." Jasmine expressed fear of Father during multiple interviews with DCFS, yet Mother relies largely on Father to administer discipline in her home: she stood by watching as

Father threw Jasmine to the floor and wrestled with the child when she tried to escape. Mother is an enabler of Father's violence.

Finally, Mother and Father drove Jasmine to a remote area in January 2013, telling her that they were going to a place where "nobody could hear me scream," because the neighbors had notified the police of her screams a few days earlier. Jasmine tried to jump from the moving car to escape from Father, who pushed all of his weight on her as she crouched on the floor.

Parental failure to "acknowledge[ ] the inappropriate nature of [ ] parenting techniques and disciplinary methods" justifies a disposition removing the child from parental custody and a finding that no reasonable means to protect the child are available. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 918.) When child expresses fear of her father, who tends to overreact to minor problems with anger or hostility, removal is proper to protect the child from the father's abusive tendencies. (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 196.) Further, removal is appropriate when the evidence shows that the custodial mother is unwilling or unable to protect the child from abuse by the child's father. (*In re R.V.* (2012) 208 Cal.App.4th 837, 849.) In that situation, the juvenile court can reasonably find that "the mother needed to make significant progress before she could provide [the child] with a safe home." (*Ibid*.)

Here, Mother has failed to acknowledge the inappropriate nature of the parenting techniques and discipline she has administered, along with Father, who overreacts to minor behavioral problems with anger. Mother violated the juvenile court's orders by having unmonitored contact with Jasmine, demonstrating little respect for the dependency process. Mother's older daughter L. participated in Mother's attack on Jasmine in 2012 and called on Father to punish Jasmine in 2013, indicating that L. would not help provide Jasmine with a safe home.

As of the time of disposition, Mother had not participated in any services to achieve insight into appropriate disciplinary methods, or learn how to defuse oppositional teenage behavior and develop communication skills that do not involve banging a child's head against a tile floor. She ignored DCFS's recommendation to participate in

11

counseling.  Neither Mother nor Father think they have a problem, a denial that flies in the face of the unchallenged, sustained jurisdictional findings.  This is not a close case.  There is "evidence of a strong potential for recurrence of the abuse.  A primary purpose of the juvenile law is protection of the child."  (*In re Jose M.*, *supra*, 206 Cal.App.3d at p. 1104.)  Ample evidence supports the juvenile court's disposition order removing Jasmine from parental custody due to a substantial danger to her safety and well-being if she remains in Mother's home.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.