Filed 6/24/14  In re D.D. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.D. et al., Persons Coming Under the Juvenile Court Law. | B251060 (Los Angeles County Super. Ct. No. CK99236) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.B., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Marguerite D. Downing, Judge.  Affirmed in part and reversed in part.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

T.B. (Mother) appeals from the juvenile court's June 12, 2013 jurisdictional and July 23, 2013 dispositional orders, contending that substantial evidence does not support the court's orders adjudging female minors D.D. (born in 2000) and B.R. (born in 2009) dependents of the court pursuant to Welfare and Institutions Code sections 300, subdivisions (b) (failure to protect) and (d) (sexual abuse).[1] She also contends that the dispositional orders must be reversed because there was no substantial evidence of current risk of harm to the minors. Alleged fathers R.D. and Anthony R. are not parties to the appeal. We conclude that substantial evidence supported jurisdiction under section 300, subdivision (b), but that substantial evidence did not support jurisdiction under section 300, subdivision (d). We also conclude that substantial evidence supported the court's dispositional orders. We affirm in part and reverse in part.

## BACKGROUND

### A. The detention report and hearing

On April 30, 2013, the Department of Children and Family Services (DCFS) reported the following in connection with a detention hearing before the juvenile court to determine whether the minors should be removed immediately from the care of Mother.

On October 25, 2012, DCFS received a referral alleging Mother was an "alcoholic drug addict who is high daily." In the course of its investigation, DCFS learned that on September 18, 2012, while Mother was babysitting the two sons of her cousin J.W. at Mother's home, Mother had been arrested for having sexual intercourse with J.J., the 14-year-old son of J.W. According to the police report, then 31-year-old Mother, wearing only a towel, had entered the room where J.J. had been listening to music. Mother asked him if he wanted "'to fuck,'" then climbed on top of him and began having unprotected sex. J.W. entered the house looking for her children and found Mother having sex with J.J. in the bedroom while her other son was in another bedroom. Mother was positioned on her knees, "screaming 'fuck me harder.'" Mother ran to the bathroom and locked the door. In response to a domestic disturbance call, the police found J.W. yelling and

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

banging on the bathroom door. Mother told police that she knew J.J. was only 14 years old and that she had had sex with him two times in the same bedroom in July 2012. Mother told police that she knew what she was doing was wrong, but could not "'help'" herself because she "'likes'" him. Later, in a written statement, Mother stated that as she had exited the shower to prepare for a job interview, J.J. had told her not to get dressed and had pulled her on top of him "in a lustful way." Mother said J.J. told her he was in love with her and he "doesn't care who knows." Mother pleaded no contest to a violation of Penal Code section 288, subdivision (c)(1), felony lewd act upon a child. She was placed on five years' probation and was sentenced to 365 days in county jail.

On March 15, 2013, DCFS learned that Mother had been released from custody and was living with the minors and maternal grandmother. DCFS noted that the matter was "'high risk'" because there had been three previous referrals in which Mother's "poor decision making and lack of judgment" had jeopardized the minors' well-being.

At the April 30, 2013 detention hearing, the juvenile court found a prima facie case that D.D. and B.R. were minors described by section 300, subdivisions (b) and (d). The court did not order the minors detained from the care of Mother.

## B. The section 300 petition

On April 30, 2013, DCFS filed a section 300 petition pursuant to subdivisions (b) and (d), alleging that the minors came within the jurisdiction of the juvenile court.

As sustained, the petition alleged that Mother had sexually abused J.J. ,and as a result Mother had a criminal history of a conviction of lewd act upon a child; and Mother was a registered sex offender. The sexual abuse of J.J. by Mother endangered the minors' physical health, safety and well-being and placed them at risk of harm, danger, and sexual abuse.

Subsequently, the juvenile court denied as untimely DCFS's filing of a first amended petition pursuant to section 300, subdivision (b) that alleged alcohol abuse by Mother, explaining that the parties were ready to proceed with the adjudication; the minors would be protected by the sustaining of the original petition; and the court could provide necessary services without the alcohol abuse allegations.

## C.  Subsequent removal from Mother's care

On May 10, 2013, DCFS filed an application for removal of the minors from Mother's care, which was granted by the juvenile court.  Attached to the application was an affidavit from DCFS stating that Mother had told DCFS on May 7, 2013, that she had been drinking beer and was under the influence when she had sex with J.J.  Mother claimed her "alcohol abuse problem was the root cause of her sexual abuse of [J.J.]"  On May 9, 2013, Mother told DCFS that although she had had sexual intercourse with J.J., the minors were "'not endangered.'"  She stated, "'I wish I was using my brain that day.  I had a couple of beers. . . . I went in the shower and it just happened when I got out.'"  She denied having had sex with J.J. in July 2012, stating that "' he just said that he liked me.  I said that was crazy.'"  Mother then stated that she did not have a drinking problem and that she was the victim of false allegations "from a woman in the neighborhood."

The affidavit also stated that on May 9, 2013, D.D. told DCFS that she had not been aware of why Mother had been arrested.  D.D. read the detention report and "appeared shocked by the information and stated that she had not observed [Mother] sexually abuse any child."  Maternal grandmother stated that Mother began to have a "' problem with drinking" after her son died in childbirth in 2004.

Court orders shown by Mother to DCFS indicated that Mother "shall not be alone with any minor."  DCFS requested removal of the minors from Mother's care, which the juvenile court ordered.  Subsequently, DCFS received a nunc pro tunc order from the criminal court clarifying that the order for Mother "to not be alone with any minors does not apply to [Mother's] Biological Children," and upon DCFS's application, the court ordered the minors to be returned to and remain in Mother's care.

## D.  The jurisdictional and dispositional report

On June 12, 2013, DCFS reported the following in connection with the jurisdictional and dispositional hearing, at which the juvenile court determines whether the minor shall be declared a dependent and issues orders for the minor's care.

On May 18, 2012, a referral had been made alleging that the minors were victims of physical and emotional abuse by the minors' paternal uncle, Calvin D., who had been

4

Mother's boyfriend at the time. On June 18, 2012, a referral had been made alleging general neglect and emotional abuse by Mother and physical abuse by Calvin D. stemming from an incident where Calvin D. had dropped B.R. from a second-story window. The referral also alleged that Mother was a frequent alcohol and drug abuser. The allegation of emotional abuse was substantiated around the same time Mother was arrested in September 2012. On October 25, 2012, while Mother was incarcerated, a referral was made alleging general neglect by Mother based on her abuse of drugs and alcohol. The allegations of general neglect were later substantiated.

On May 21, 2013, J.W. told DCFS that she had been concerned about Mother's drinking and prior to allowing her son to go to Mother's home, would call Mother to see if she had been drinking. Since the sexual abuse incident, J.J. had been having behavioral problems and had been seeing a counselor.

As of May 16, 2013, Mother was residing with minors, maternal grandmother, and maternal grandmother's two children (maternal aunts), one of whom was a minor. Under the terms of her probation, Mother was attending a 52-week sex offender program. Mother had also attended three Alcoholics Anonymous meetings. On May 22, 2013, Mother obtained a modification of her probation order, stating that the condition that Mother not be alone with any non-biological minors did not apply to maternal aunt T.H.

### E. The jurisdictional hearing

At the jurisdictional hearing on June 12, 2013, the juvenile court denied DCFS permission to file a first amended petition as untimely. After hearing argument, the court observed that Mother had claimed she had been under the influence of alcohol as a defense to sexually abusing an under-age boy; there was no evidence that Mother had addressed her alcohol problem; Mother had "little insight" into her behavior; Mother disclaimed responsibility; and Mother claimed to be a victim. The court stated, "The fact that [Mother] would violate a duty owed to a minor under her supervision, causes this court concern, because although at this point she had not done it, she apparently has to [*sic*] proclivity to abuse her position of trust and to take advantage of these kids." The

court determined that the minors were persons described by section 300, subdivisions (b) and (d), and sustained the allegations of the petition.

## F. The dispositional hearing

At the July 23, 2013 dispositional hearing, the juvenile court declared the minors dependents of the court and ordered Mother to retain physical custody of the minors. The court ordered family maintenance services for Mother, including an alcohol program with random testing and aftercare; a parenting program; and individual counseling to address case issues, including appropriate sexual behavior. The minors were also ordered to participate in individual counseling and were referred to the regional center, which assists individuals with developmental disabilities.

Mother appealed.

## DISCUSSION

## A. Standard of review

The juvenile court's jurisdictional finding that the minor is a person described in section 300 must be supported by a preponderance of the evidence. (§ 355; Cal. Rules of Court, rule 5.684(f).) "'"'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]'" [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259.) "[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)

**B. Substantial evidence supported the juvenile court's jurisdictional findings under section 300, subdivision (b)**

Mother contends the evidence was insufficient to support the juvenile court's jurisdictional findings under section 300, subdivision (b). We disagree.

Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."

"A jurisdictional finding under section 300, subdivision (b) requires: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) "[T]he use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1434–1435, fn. omitted.) Thus, jurisdiction may be exercised "either based on a prior incident of harm or a current or future risk." (*Id.* at p. 1435, fn. 5.)

As stated, we "must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 53.) Thus, viewing all conflicts in favor of DCFS and drawing all reasonable inferences in support of the judgment, as we must (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185), we conclude that substantial evidence supports the juvenile court's findings that the minors were described by section 300, subdivision (b).

In sustaining section 300, subdivision (b) of the petition, the juvenile court held that the allegations were true that Mother had sexually abused J.J., Mother had a criminal history of a conviction of lewd act upon a child, Mother was a registered sex offender,

7

and the sexual abuse of J.J. by Mother endangered the minors' physical health, safety, and well-being and placed them at risk of harm, danger, and sexual abuse.

Thus, our inquiry is whether there was substantial evidence to support that determination. There is.

The first requirement of section 300, subdivision (b), in pertinent part, is neglectful conduct by the parent demonstrating an inability to adequately supervise or protect the child. Mother's molestation of J.J. satisfies that element under *In re I.J.* (2013) 56 Cal.4th 766. In *In re I.J.*, the court held that a father's severe sexual abuse of his daughter was sufficient to support dependency jurisdiction over his sons under section 300, subdivision (j). (56 Cal.4th at p. 770.)[2] The court observed that, although the father had not sexually abused his sons, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.*' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

The court noted in *In re I.J.* that the father had exhibited extremely aberrant behavior in the severe sexual abuse of his daughter and had demonstrated a "violation of trust shown by sexually abusing one child while the other children were living in the same home and could easily have learned of or even interrupted the abuse." (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.) The court observed that "'[s]exual or other serious physical

---

[2] Although the petition alleged jurisdiction under section 300, subdivisions (b), (d), and (j), our Supreme Court focused only on section 300, subdivision (j) in its analysis because a reviewing court can affirm the juvenile court's finding of jurisdiction over a minor if only one of multiple statutory bases for jurisdiction alleged is supported by the evidence. (*In re I.J.*, *supra*, 56 Cal.4th at pp. 773–774.)

8

abuse of a child by an adult constitutes a fundamental betrayal of the appropriate relationship between the generations. . . . When a parent abuses his or her own child, . . . the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody. (See § 300, subds. (d), (e), (j).)'" (56 Cal.4th at p. 778.)

In *In re I.J.*, the court found section 355.1, subdivision (d) persuasive. It provides that "a prior finding of sexual abuse (of anyone, not just a sibling) is prima facie evidence that the child who is the subject of the dependency hearing is subject to the court's jurisdiction under section 300," noting that subdivision did not limit the sexual abuse of a person of the same gender as the child before the court. (*In re I.J.*, *supra*, 56 Cal.4th at p. 779.) Although there had not been a prior finding of sexual abuse in the case before it, the court determined that section 355.1 was relevant "because it evinces a legislative intent that sexual abuse of someone else, without more, at least *supports* a dependency finding." (56 Cal.4th at p. 779.)

The evidence shows that Mother has such poor judgment, such a lack of impulse control, such a lack of insight into the harm caused by sexual interaction between a child and an adult, such ignorance of the appropriate boundaries between children and their adult caretakers, and such an inability to take responsibility for her own actions that the minors' health and physical safety is endangered so long as she is the person charged with their protection.

The second requirement of section 300, subdivision (b), in pertinent part, is causation of a substantial risk of physical harm to the minor. Mother argues that this prong is inapplicable because causation is speculative. Mother admits that she had suffered a "lapse in judgment" by engaging in sex with J.J., but in support of her argument that harm to the minors is speculative, she urges that her sexual intercourse with J.J. was consensual and not forceful. Mother's assumption that a 14-year old would be able to engage in a "consensual" sexual relationship with her is evidence of her poor judgment, lack of appropriate boundaries, and lack of insight.

9

Mother's possible duplicity, along with her dangerous lack of judgment, lack of insight into the harm that minors suffer when they engage in sexual intercourse with adults, inability to take responsibility for her actions, and failure to recognize how they are harmful is demonstrated in other statements Mother has offered on her own behalf. She has blamed her use of alcohol and everyone else for her conduct. Mother told police that she knew J.J. was only 14 years old and that she had had sex with him two times in the same bedroom in July 2012. She told the police that she knew what she was doing was wrong, but could not "'help'" herself because she "'likes'" him. This was so even though J.J.'s minor brother was in the house under her care at the time she had sex with J.J. Later, she blamed alcohol and apparently J.J. for her lapse of judgment, claiming that J.J. pulled her on top of him "in a lustful way" and said he was in love with her and he "doesn't care who knows." On another occasion, she claimed that she did not have an alcohol problem, and denied having had sex with J.J. twice in July 2012, blaming a woman in the neighborhood for having made false accusations against her.

Mother also argues that she is not a danger to her daughters because there was no evidence that she had a proclivity to molest sexually immature females. This contention highlights Mother's failure to understand the nature of her deficits. As noted above, the juvenile court here found "[t]he fact that [Mother] would violate a duty owed to a minor under her supervision, causes this court concern, because although at this point, she had not done it, she apparently has [proclivity] to abuse her position of trust and to take advantage of these kids." This is adequate under *In re I.J.*, *supra*, 56 Cal.4th at pages 773, 778, and 779. From all of the facts, including the abuse of J.J. while his brother was in the house, the trial court reasonably could have concluded that Mother's propensity to abuse her position of trust and her other deficits described above posed a danger to her daughters. It is this same type of judgment deficit that sometimes renders parents who abuse drugs or alcohol unable to protect their children from physical harm. One need not be a drug or alcohol abuser to suffer from judgment so impaired that the parent does not recognize that he or she suffers from dangerously poor judgment.

10

The third requirement of section 300, subdivision (b), in pertinent part, is substantial risk that the child will suffer serious physical harm. This third element is addressed and satisfied by virtue of the same analysis conducted above.

Mother also argues that D.D. and B.R. were not in the home when the sexual abuse occurred, D.D. was not aware of the reason for Mother's arrest until DCFS informed her of it, Mother made appropriate arrangements for the care of the minors when she was incarcerated, and Mother complied with the terms of her probation. The reasoning of *In re I.J.* undercuts these arguments as well.

We are not persuaded by Mother's citation to *In re B.T.* (2011) 193 Cal.App.4th 685, which predates *In re I.J.*, and where the dependent minor had not even been born at the time the mother had sexual relations with a minor neighbor. (*In re B.T.*, at p. 693.)

We conclude that substantial evidence supported the juvenile court's jurisdictional findings under section 300, subdivision (b).

## C. Substantial evidence did not support the juvenile court's jurisdictional findings under section 300, subdivision (d)

We agree with Mother that substantial evidence did not support the juvenile court's exercise of jurisdiction over the minors under subdivision (d) of section 300.

Section 300, subdivision (d), provides in pertinent part that a child may be declared a dependent of the court when: "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

There was no substantial evidence of a risk that D.D. and B.R. would be sexually abused by Mother, who had engaged in sex with a 14-year-old boy. This is not like *In re I.J.*, *supra*, 56 Cal.4th 766. In that case the father had engaged in sexual abuse of his 14-year-old daughter since she was 11 years old by fondling her vagina, digitally penetrating her, raping and orally copulating her, and forcing her to expose her vagina to him and to

watch pornographic videos with him.  (*Id.* at p. 771.)  There is no behavior here that leads us to conclude that Mother would sexually abuse her daughters.

**D.  The juvenile court did not base its ruling on Mother's use of alcohol**

Mother contends that to the extent the juvenile court relied on her alleged abuse of alcohol, it erred because alcohol abuse was not alleged in the sustained petition.

The record shows that the juvenile court referenced Mother's use of alcohol with respect to Mother's defense of her sexual abuse of J.J., concluding that she had no insight into her behavior and that she posed a safety risk to the minors under *In re I.J.*  As the court stated, the court did not need "the alcohol issues" to be in the petition in order to sustain the petition under section 300, subdivisions (b) and (d).  We agree with the juvenile court.

**E.  The juvenile court did not abuse its discretion in making the dispositional orders**

Mother contends that the dispositional orders must be reversed because there was no substantial evidence of current risk of harm to the minors.  Mother contends that her terms of probation prohibited her from having contact with J.J. or being alone with any child who was not her biological child; prohibited her from consuming alcohol; and required her to enroll in a sex offenders' counseling program.  She contends she has no need for family maintenance services.  We disagree.

When a minor is adjudged a dependent child of the court under section 300, section 362, subdivision (a) gives the juvenile court authority to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court."  The court may make orders to the parents as it "deems necessary and proper to carry out this section," including participating in a counseling or parent education program.  (§ 362, subd. (d).)  "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."  (§ 362, subd. (d).)

"The juvenile court has broad discretion to decide what means will best serve the child's interest and to fashion a dispositional order accordingly.  (*In re Jose M.* (1988)

12

206 Cal.App.3d 1098, 1103–1104.) Its determination will not be reversed absent a clear abuse of that discretion. (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1005.)" (*In re Corey A.* (1991) 227 Cal.App.3d 339, 346.)

Mother has not established that the juvenile court abused its discretion in ordering programs tailored specifically to Mother's case or that compliance with terms of probation would obviate the need for family maintenance services. The criminal system and the dependency system are separate; thus, if Mother were to violate her terms of probation, the juvenile court would still be able to protect the minors.

### DISPOSITION

The June 12, 2013 jurisdictional order adjudging D.D. and B.R. dependents of the court pursuant to section 300, subdivision (b) is affirmed. The June 12, 2013 jurisdictional order adjudging D.D. and B.R. dependents of the court pursuant to section 300, subdivision (d) is reversed. The July 23, 2013 dispositional orders are affirmed.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.

---

* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.