Filed 7/2/14  In re Logan O. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re LOGAN O. et al., Persons Coming Under the Juvenile Court Law. | D065010 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>MELISSA T.,<br><br>     Defendant and Appellant. | (Super. Ct. No. 518790A-B) |

APPEAL from orders of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Melissa T. appeals juvenile court jurisdictional and dispositional orders concerning her sons, Logan O. and Landon O. She contends there was insufficient evidence to support the true findings on the dependency petitions, the dispositional orders removing the children from her physical custody, and the order placing them with their father, David T. She also asserts reasonable alternatives were available to prevent removal from her custody, and the court abused its discretion by ordering her visitation be supervised. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2013, the San Diego County Health and Human Services Agency petitioned on behalf of seven-year-old Logan and six-year-old Landon, under Welfare and Institutions Code[1] section 300, subdivisions (b) and (g),[2] alleging they were at substantial risk of harm. The petitions alleged the children were in the car with Melissa and her boyfriend, Stephen O., when Melissa and Stephen were arrested; marijuana and methadone pills were found in Melissa's two purses in the car; glass pipes with crystal white residue were found in the motel room where the family had been

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]     The court subsequently dismissed the count under section 300, subdivision (g).

2

staying; and David's whereabouts were unknown. The court ordered the children detained and ordered supervised visits for Melissa.

Melissa told the social worker she knew nothing about the drugs and drug paraphernalia. She said Stephen had been selling drugs, but she used only marijuana, for which she had a prescription. She spoke rapidly, and the skin on her arms, hands and face was scarred as if she had been picking at it. She said David had fled the United States and was living in Norway. He was located in Florida. David and Melissa had been married from 2002 until 2009. The court found he was the children's presumed father, appointed counsel and ordered supervised visits for both parents.

David said his contact with the children had been limited since they moved to California with Melissa. He acknowledged he had been arrested in January 2009 for domestic violence, but said Melissa had been the aggressor during the incident and the charges were dropped. He requested custody and said he had family support in Florida and a home for the boys.

Melissa submitted a drug test, but the results showed the sample had been diluted. She said she was attending substance abuse treatment and testing clean. There was a report that on one occasion, there was a loud incident at the children's school between Melissa and the children's caregiver. The caregiver said Logan had difficulty adjusting to visits with David.

The court took emergency jurisdiction and found the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) applied because earlier

3

there had been custody orders issued in Florida. However, the family court in Florida declined to accept jurisdiction.

On November 7, 2013, the court gave the social worker discretion to detain the children with David, including allowing him to take them to Florida. After they moved, David said Logan had a cell phone and he would not allow David access to it. Melissa admitted giving Logan the phone, but said she did not realize she was not allowed to do so.

At the jurisdictional hearing, the social worker testified Melissa denied drugs other than the marijuana found in the car belonged to her. He said there were indications Melissa used the two purses that contained drugs that police found in the car, and there was drug paraphernalia with drug residue in the hotel room where the family had been staying.

The parties stipulated if the children's caregiver were to testify, she would say she had a close relationship with Melissa and Stephen and no knowledge that Stephen used methamphetamine or heroin. She had participated when the family confronted Stephen about abusing prescription medication, which he had for pain from injuries he received as a professional football player. It was stipulated the maternal uncle would deny he ever saw Stephen or Melissa use or traffic in illegal drugs. The maternal grandmother described Melissa as a loving, devoted parent, and said David sometimes had shown erratic behavior, and Melissa had obtained a restraining order against him.

Melissa testified she and Stephen had been in a relationship for about two years and had lived together until she moved out in August 2013 after he was cited for

4

possessing drug paraphernalia. She said, although they had separated, she relied on him for financial help. She denied using or possessing heroin, methamphetamine or methadone. She and Stephen denied law enforcement reports that they charged out of the car and screamed at the officers when they were stopped.

Stephen admitted using methadone excessively and said the drugs and paraphernalia found in his car and the hotel belonged to him. He said he had not told Melissa of his use of heroin or methamphetamine, and he had never known her to use the drugs.

After considering the evidence presented and argument by counsel, the court found the allegations of the petitions to be true. The court noted numerous instances that caused it to question Melissa's credibility and its concern about her failure to protect the children.

For the dispositional phase of the hearing, David testified that after he learned the children had been detained, he came to San Diego, stayed for a month and a half and visited them every other day. Before that time, he had not seen them for two to three years. He said he had been unable to contact Melissa, and she responded to his e-mails only when she needed money or wanted to change the children's names. He explained he had given permission to change their Vietnamese first names because other children were mocking them, but he did not agree to change their last name. He said they had transitioned well into his home. The social worker testified he did not believe it would be detrimental to place the boys with David.

5

After considering the evidence and further argument by counsel, the court declared the children dependents, removed custody from Melissa and found reasonable efforts had been made to prevent the removal. It placed them with David, awarded physical and legal custody to David, ordered Melissa's visits be supervised and terminated dependency jurisdiction.

## DISCUSSION

### I

Melissa contends the court erred by asserting jurisdiction over the children because the evidence was insufficient to show they were at substantial risk of future harm. She argues by the time of the jurisdictional hearing, she had voluntarily enrolled in services and was testing clean, and there was no reason to believe she would allow Stephen to be around the children in the future.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) " ' " ' "The rule is clear that the power of the appellate courts begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact." ' " ' " (*In re Tanis H.* (1997) 59 Cal.App.4th 1218, 1227.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show

the evidence is insufficient to support the court's findings.  (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

The purpose of dependency law is to:  "provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, [or] neglected . . . and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2.)

In deciding whether a child is at risk under section 300, subdivision (b), the court determines whether the totality of the circumstances requires juvenile court jurisdiction over the child.  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1440.)

Substantial evidence supports the jurisdictional orders.  The court found true the allegations the children were in the car when Melissa was arrested for child endangerment and she and Stephen were arrested for possession for sale of a controlled substance.  The court also found marijuana and methadone were located in two of Melissa's purses in the car, glass pipes with a crystal white residue were found in the hotel room where the children had been staying, and the pipes were within reach of the children.

The police officer said after Melissa retrieved a key to the hotel room from a purse in the car, he searched the purse and found a small, plastic bindle containing marijuana and a glass pipe containing crystal residue.  Also in the car was another purse, which contained Melissa's Social Security card, methadone pills, more than $250 in a case, marijuana, a crystal substance and a tar substance the officer believed was an illegal narcotic.  In addition, in the rear of the car there were two containers of methadone with

7

Stephen's name on them and a backpack containing marijuana. In the hotel room, officers found glass pipes containing crystal white residue next to the bed. In Stephen's pocket, there was a pipe with tar-like residue.

Melissa disputed the officer's account, but the court gave greater weight to the police report, stating it questioned Melissa's credibility and pointed out that she had lied on the paternity questionnaire and a family friend had reported how she had lied to his family for a long period of time. The evidence fully supports the court's findings. Substantial evidence supports the jurisdictional finding that the children were at substantial risk based on the true findings on the allegations of the petitions.

## II

Melissa asserts there was not substantial evidence to support the orders removing the children from her custody. She argues it was not necessary to remove them to ensure they would not be exposed to risk posed by Stephen.

Section 361, subdivision (c) provides in part:

> "A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of . . .:
>
> "(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this

8

discretion." (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.)  The focus of the dependency statutes is to prevent harm to the child.  (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.)  The court is required to consider the parent's past conduct as well as present circumstances.  (*In re Troy D.* (1989) 215 Cal.App.3d 889, 900.)  The court's dispositional order is reviewed to determine whether it is supported by substantial evidence.  (*In re Lana S.* (2012) 207 Cal.App.4th 94, 105.)

Substantial evidence supports the orders removing Logan and Landon from Melissa's custody.  She exposed them to great risk by them being in the car with her and Stephen where dangerous drugs and drug paraphernalia were within reach.  She acknowledged Stephen had been selling drugs.  She said she and Stephen were no longer in a relationship, but her poor judgment and lack of credibility were cause for doubting her word.  The evidence presented supports the orders removing the children from her custody.

III

Melissa maintains there were reasonable alternatives to protect Logan and Landon short of removing them from her custody.

Assuming without deciding that Melissa has preserved this issue for appeal, she has not shown there were reasonable alternatives to removing the children.  The court expressly found, as required by section 361, subdivision (c), there was no reasonable alternative to removal, and reasonable efforts had been made to prevent or eliminate the need for removal.  Services had been offered and Melissa began voluntary services, but she continued to deny responsibility for the risk to the children when they were exposed

9

to drugs and drug paraphernalia in the car and the hotel room where they had been staying.  Melissa has not shown there were reasonable alternatives to protect them without removing them from her custody.

IV

Melissa asserts the court erred by placing the children in a distant home with a parent they did not know.  She argues this placement is detrimental to them.

Section 361.2, subdivision (a) provides when a court orders removal of a child from a custodial parent under section 361, if the noncustodial parent requests custody, the court must place the child with the noncustodial parent unless it finds such placement would be detrimental to the safety, protection, or physical or emotional well-being of the child.  The court's finding of detriment must be made by the standard of clear and convincing evidence.  (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.)

Substantial evidence supports finding it would not be detrimental to the children to place them with David.  The social worker recommended the placement with the understanding David would take them to Florida, where he has a home, employment and support from his family.  The social worker noted he had been proactive in identifying a school for the children and psychological counseling, which would be of benefit to them. The social worker reported David had provided adequate care in the past and there was no reason to believe he would not do so in the future.  David had tried to contact the children after Melissa moved them to California and, when he learned of the dependency proceedings, immediately flew to San Diego and requested custody.  He stayed for a month and a half and visited every other day to reestablish a relationship.  The social

worker assessed him as an appropriate parent.  Melissa has not shown error by the court not finding it would be detrimental to the boys to place them with David.

V

Melissa contends the court abused its discretion by ordering that her visitation be supervised.  She argues the record provides no rationale for limiting her to supervised visitation.

When the juvenile court terminates its jurisdiction over a child, the court may issue an order determining the custody of, and visitation with, the child.  (§ 362.4.)  When fashioning orders under section 362.4, the court is guided by the child's best interests.  (*In re John W.* (1996) 41 Cal.App.4th 961, 973; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.)  It must consider the totality of the child's circumstances when making decisions regarding the child.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)  The court's orders regarding visitation may be reversed only upon a clear showing of an abuse of discretion.  (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.)  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' "  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Melissa has not shown an abuse of discretion by the court awarding sole custody to David, terminating jurisdiction and ordering her visits be supervised.  At times, Melissa acted inappropriately when interacting with the boys.  After they were detained, she went to their school, had a loud confrontation with their caregiver and was told she

11

would be escorted off school property if she persisted.  Despite the fact the court ordered her visits would be supervised, she gave Logan a cell phone so he could call her privately, and David had had to end one call when she refused to stop talking about an inappropriate topic.  Melissa confused the boys by talking about moving them back to San Diego from Florida.  The record supports the court's orders.  Melissa has not shown an abuse of discretion.

## DISPOSITION

The orders are affirmed.

IRION, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

12