206 Cal.App.3d 1098 (1988)
254 Cal. Rptr. 364
In re JOSE M., a Minor.
SAN DEIGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner and Respondent,
v.
BLANCA N., Objector and Appellant.
Docket No. D006443.
Court of Appeals of California, Fourth District, Division One.
November 30, 1988.
*1099 COUNSEL
Michele Sacks Lowenstein, under appointment by the Court of Appeal, for Objector and Appellant.
*1100 Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Kerry Wells Hamor, Deputy District Attorneys, for Petitioner and Respondent.
David H. Askey, under appointment by the Court of Appeal, for Minor.
OPINION
BENKE, J.
Blanca N. appeals an order declaring her minor son, Jose M., a dependent child of the juvenile court (Welf. & Inst. Code,[1] § 300, subd. (a)). She contends the court erred in refusing to order informal supervision (§§ 330, 360) and the evidence was insufficient to support the finding of dependency. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Petition
On November 5, 1986, the Department of Social Services (DSS) filed a petition under section 300, subdivision (a), alleging Jose had no parent or guardian actually exercising or willing and able to exercise care and control, in that the emotional atmosphere in the home, including excessive discipline by the mother and stepfather, was detrimental to Jose. On March 16, 1987, the petition was amended to allege, "[T]he mother and the stepfather subjected the minor to excessive discipline including but not limited to pulling said minor's hair, dragging him upstairs, throwing him to the floor and striking said minor with hands and a belt causing, among other things, a horseshoe-shaped scar on the minor's right forearm and bruises on his left leg and said minor's mother has failed, refused, and been unable to protect said minor."

The Social Study Reports
According to the social study report dated November 19, 1986, on November 4 the National City Police Department began investigating the physical abuse of Jose, born in August 1976, and his sister Gelena. Upon interviewing Jose at school, they found him dirty and bruised. He said his mother had "whooped" him with a belt. He told social worker John T. Lee his stepfather had pulled his hair, dragged him upstairs, and thrown him down on the carpet. Both his mother and stepfather had hit him. Gelena *1101 confirmed Blanca had hit Jose. Additionally, neighbors told Lee they had witnessed the parents hitting the children.
In an interview with Lee, Blanca and her husband admitted spanking Jose with a belt, but said they took only two or three swings. The stepfather denied pulling Jose's hair. Blanca was arrested.
On November 7, 1986, Dr. Chadwick of Children's Hospital examined Jose. The examination disclosed a scar on his forearm, probably a mark from a belt buckle. There was a bruise on his left leg which could have been caused by a blow from a stick or paddle. There were scars from many infected bug bites. Dr. Chadwick suspected Jose had suffered from scabies, and found there was a long-standing hygiene problem and a need for dental work. He concluded there had been physical and medical neglect, as well as physical abuse.
On November 14, Lee again interviewed Blanca. She admitted she had hit Jose with a belt, but "not this year." She denied knowledge of any belt buckle marks.
Lee concluded in his report Jose's interests might be safeguarded if the parents made changes in their parenting and discipline methods. He recommended Jose be declared a dependent child, detained in Blanca's home, and reevaluated; Blanca and her husband use no corporal punishment; the family undergo intensive therapy with Homestart, Inc.; and the parents participate in ongoing individual or family counseling.
In Lee's first supplemental report, dated January 13, 1987, he stated that on December 10, 1986, Mark Pezner, who had been counseling the family for the preceding two weeks, said Blanca was responding but the stepfather was not participating actively in the counseling. Pezner felt the prognosis was positive. On January 5, 1987, Pezner again expressed optimism; the family had been cooperative and their progress had been very good. Lee determined the court's direct involvement was no longer necessary, and recommended the petition be dismissed and a voluntary services agreement (§ 330) be instituted.
According to the psychological evaluation of March 11, Jose had experienced physical abuse, and was torn between protecting himself and telling on his mother.
In Lee's second supplemental report, dated March 23, he stated: "Since the family has been receiving intensive, ongoing, in the home therapy, and since the therapist feels that there is little or no danger of Jose being physically abusive [sic] this time, it appears safe for the minor to remain in the *1102 home. There is a long history of physical abuse, covering several years.[[2]] The mother has signed a voluntary services agreement, although the Court may see fit to make the minor a dependent child of the Court. Owing to the long history of physical abuse and the risk involved, dependency may be the most appropriate course. [¶] In any event, the Department of Social Services plans to provide ongoing social services, as well as to coordinate with other community social service agencies, such as Homestart, which provides the current in-home therapy program." Lee repeated the recommendation of his November 19, 1986, social study.

Trial
The court denied Blanca's motion to dismiss the petition and institute informal supervision. It overruled her hearsay objection to the social study reports and Lee's testimony, but granted in part her motion to strike portions of the report (ante, fn. 2.).
Lee testified Jose told him his stepfather had pulled his hair, dragged him upstairs, thrown him to the floor, and struck him. Jose also said his mother had disciplined him, and had been present when his stepfather had done so. Blanca and her husband admitted to Lee they had spanked Jose with a belt.
In his November 19, 1986 report, Lee recommended Jose be placed at home because his behavior was erratic and he was unhappy in group home placement, and there were indications the family was amenable to intensive, in-home counseling. On that date, Jose was placed with his mother. In his January 13, 1987 report, Lee recommended a voluntary services agreement because he wanted to avoid forcing Jose to testify against his mother. The family had done well in therapy with Homestart begun in late November 1986, Blanca had cooperated with the program, and there had been no complaints of corporal punishment. Blanca had also attended optional parenting classes.
After working with the family for three more months, however, Lee saw strong potential for backsliding and for the recurrence of physical abuse. He changed his recommendation from informal supervision to a declaration of dependency because the neglect and physical abuse in the family had been continuing for several years; he believed the family's social needs and difficulties would remain and perhaps increase because a new baby was expected; and he wanted the authority of a court order to ensure Jose continued in counseling, there was no corporal punishment, and the family continued to cooperate with DSS. Also, it had been decided Jose's testimony at trial would not be necessary.
*1103 Lee concluded Jose should be made a dependent child. He believed the family needed the court's services and intervention for the child's protection, and court supervision afforded more protection than a voluntary plan. The psychological report stated Jose's main defense was denial of the abuse, and Jose had recanted his reports of abuse to Lee. Thus, Lee was not sure whether Jose would tell him if there was further abuse.
Lee recommended Jose continue to reside with his family. He felt the family situation was calmer and a little bit more controlled, although he still saw a lot of family stress.
Josephine Acosta, a family advocate with Homestart, a child abuse prevention agency, testified she and a therapist had worked with Jose's family since December 1986 for three months. The family had improved and Jose was happier. His relationship with his mother was warm and loving. Blanca had been cooperative and reliable and Acosta believed this would continue. She felt the family would be all right without further intervention, although counseling would be beneficial.
The court ordered Jose be continued a dependent child (§ 300, subd. (a)) and placed in Blanca's home, the mother and stepfather use no corporal punishment, and the family continue to accept intensive therapy from Homestart and participate in ongoing individual or family counseling as recommended by Homestart or DSS.

DISCUSSION

I
(1a) Blanca contends the court erred in refusing to dismiss the petition and offer the family voluntary services (§§ 330, 360).[3]
(2) The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional *1104 order in accordance with this discretion. (In re Eric B. (1987) 189 Cal. App.3d 996, 1005 [235 Cal. Rptr. 22]; In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1113 [200 Cal. Rptr. 789].) The court's determination in this regard will not be reversed absent a clear abuse of discretion. (In re Eric B., supra, 189 Cal. App.3d at p. 1005.)
(1b) The record here amply supports the lower court's determination formal supervision was appropriate. It reveals legitimate concerns for Jose's ongoing physical and emotional well-being. Although there was evidence the family situation had improved, there was also evidence of a strong potential for recurrence of the abuse. A primary purpose of the juvenile law is protection of the child. (In re Nicole B. (1979) 93 Cal. App.3d 874, 879-880 [155 Cal. Rptr. 916].) The court here did not abuse its discretion in concluding Jose could better be protected by granting the petition than dismissing it and ordering voluntary services.

II
(3) Blanca asserts the social study reports and Lee's testimony were insufficient to support the finding of dependency under section 300, subdivision (a).[4] Citing In re Donald R. (1987) 195 Cal. App.3d 703 [240 Cal. Rptr. 821], she contends the court should have disregarded the hearsay portions of this evidence.
In Donald R., the Court of Appeal held "a written social study containing relevant evidence was properly admitted in evidence over objection at a jurisdictional hearing on a petition brought under ... section 300." (Id. at p. 707.) The court first noted California Rules of Court, rule 1365(d)[5] authorizes the admission into evidence of the social study. (Id. at pp. 709-710.) Furthermore, section 701, which describes procedures at section 300 jurisdictional hearings, states in part: "The admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision." (Id. at p. 710.) Evidence Code section 1200, subdivision (b) provides: "Except as provided by law, hearsay evidence is inadmissible." (Id. at p. 710.) Sections 281 and 355[6] are exceptions to this *1105 rule. (Id. at pp. 710-712.) Both authorize admission of relevant hearsay evidence in a social study at the jurisdictional hearing. (Ibid.) The due process rights of the parent are adequately protected so long as he receives a copy of the social study report in advance of the hearing, has the opportunity to cross-examine the author of the report and subpoena and examine the persons whose hearsay statements are set forth in the report, and is permitted to introduce rebuttal evidence. (Id. at pp. 713-714.) The Donald R. court noted "section 355 ... allows the juvenile court to receive ordinarily inadmissible hearsay evidence `because of the necessity of providing the court with a coherent picture of the child's situation.'" (Id. at p. 715, quoting In re Rose G. (1976) 57 Cal. App.3d 406, 426 [129 Cal. Rptr. 338].) Nevertheless, reasoning dependency cases were not "civil cases" within the meaning of section 355, it concluded that because section 355 "requires that a finding of dependency must be based upon evidence legally admissible under the Evidence Code in the trials of ordinary civil cases ... unless hearsay in a social study falls within an exception to the hearsay rule, the juvenile court must disregard it, and focus exclusively upon admissible evidence, in determining whether dependency has been proved by a preponderance of the evidence." (In re Donald R., supra, 195 Cal. App.3d at p. 715.)
We disagree with this conclusion, believing it directly conflicts with established authority allowing the court to consider the social study in making its dependency determination. (§ 281; rule 1365(d); In re Biggs (1971) 17 Cal. App.3d 337, 343-345 [94 Cal. Rptr. 519], quoted in In re Courtney S. (1982) 130 Cal. App.3d 567, 575 [181 Cal. Rptr. 843].) If the juvenile court was not allowed to consider a complete social study report, it would not have "a coherent picture of the child's situation" (In Re Rose G., supra, 57 Cal. App.3d at p. 426) and would be severely limited in its ability to protect the child.
Here, Blanca cross-examined Lee, presented evidence (the testimony of Acosta), and could have subpoenaed the persons whose hearsay statements appeared in the reports if she had so desired. We reject her contention the *1106 social study reports and the social worker's testimony were improperly admitted.
We also disagree with her assertion the social study reports and Lee's testimony were insufficient to support the finding of dependency. The evidence recited above is more than adequate to support the juvenile court's finding.

DISPOSITION
Judgment affirmed.
Woodworth, J.,[*] concurred.
WIENER, Acting P.J., Dissenting.
My disagreement with the majority is with their cursory rejection of In re Donald R. (1987) 195 Cal. App.3d 703 [240 Cal. Rptr. 821]. I believe Donald R. sets forth a thoughtful and persuasive analysis of the same issue presented here and that it should be followed. I would also defer to Donald R. under the doctrine of stare decisis. (Interinsurance Exchange v. Campbell (1986) 187 Cal. App.3d 242, 243, 247 [232 Cal. Rptr. 27]; Kaus, Precedent is a Many Splendored Thing or Let Thirteen Flowers Bloom (Cal. Center for Jud. Ed. & Research J. (1986).) The rejection of established precedent in this type of case creates uncertainty for our overworked juvenile courts and imposes an unnecessary burden on our Supreme Court to decide the conflict.
My application of Donald R. to this case causes me to conclude there is insufficient admissible evidence to support the juvenile court's dependency finding. I would therefore reverse the order of the trial court.
Appellant's petition for review by the Supreme Court was denied March 23, 1989. Mosk, J., was of the opinion that the petition should be granted.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] There were other references in the social study reports to past physical abuse and dependency. The trial court struck at least some of these references.
[3] Section 330 provides: "In any case in which a probation officer ... determines that a minor is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the probation officer may ... subsequent to dismissal of a petition already filed, and with consent of the minor's parent or guardian, undertake a program of supervision of the minor, ... [T]he probation officer shall attempt to ameliorate the situation which brings the minor within, or creates the probability that the minor will be within, the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services...."

Section 360, subdivision (a) reads: "After receiving and considering the evidence on the proper disposition of the case, the juvenile court may enter judgment as follows: [¶] (a) If the court finds that the minor is a person described by Section 300, it may, without adjudicating the minor a dependent child of the court, order that services be provided to keep the family together and place the minor and the minor's parent or guardian under the supervision of the probation officer for a time period consistent with Section 330...."
[4] Section 300, subdivision (a) provides a minor may be declared a dependent child of the juvenile court when he "... is in need of proper and effective parental care or control and has no parent or guardian ... willing to exercise or capable of exercising care or control, or has no parent, guardian or custodian actually exercising care or control."
[5] All rule references are to the California Rules of Court.

Rule 1365(d) provides: "A probation or social worker's report, including any social study, containing information relevant and material to the jurisdiction hearing is admissible if, on request of the parent or guardian, the probation officer or social worker is made available to be cross-examined regarding the contents of the report."
[6] Section 281 provides: "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter." In a section 300 case, the county welfare department may perform these duties in place of the probation officer. (§ 272.)

Section 355 states: "At the jurisdictional hearing, the court shall first consider only the question whether the minor is a person described by Section 300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him or her within the jurisdiction of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300 ..."
[*] Assigned by the Chairperson of the Judicial Council.