Filed 4/6/15  In re D.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.G. et al., Persons Coming Under the Juvenile Court Law. | B258378 (Los Angeles County Super. Ct. No. DK04497) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. F.G., Defendant and Appellant. | |

APPEAL from the judgment and orders of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Tyson B. Nelson, Deputy County Counsel for Plaintiff and Respondent.

## I. INTRODUCTION

One of two presumed fathers, F.G., appeals from the August 7, 2014 dispositional order. The juvenile court declared the child, D.G., a dependent under Welfare and Institutions Code section 360, subdivision (a) and ordered jurisdiction to continue. The juvenile court found that both F.G. and Noel T. are the child's presumed father under Family Code, section 7612, subdivision (c). F.G. is the child's biological father. F.G. argues the juvenile court's presumed father finding is not supported by substantial evidence. Further, the juvenile court placed the child in F.G.'s custody and continued jurisdiction. F.G. argues substantial evidence does not support the order maintaining juvenile court supervision in light of the custody order. We affirm.

## II. PROCEDURAL HISTORY

On April 3, 2014, the child, who was four years old, was detained by the Department of Children and Family Services (the department). The child's half-brother is N.T., Jr. A Welfare and Institutions Code section 300 petition was filed in part because N.T., Jr. was born with drugs in his system due to amphetamine use by C.V. (the mother). The petition identifies the child, N.T., Jr. and D.T. as potential dependents. On April 8, 2014, the juvenile court ordered the child released to F.G.'s custody. On July 31, 2014, the juvenile court sustained allegations under Welfare and Institutions Code section 300, subdivision (b). The juvenile court found the child was at risk of suffering serious physical harm as a result of the parents' failure to protect him. The juvenile court found that: N.T., Jr. was born with a positive toxicology screen as a result of the mother's illicit drug use; the mother's drug use periodically rendered her incapable of providing the children with regular care and supervision; and Noel knew or reasonably knew of mother's drug use and failed to protect the children. Stricken from the petition were allegations that Noel: had a history of illegal drug use; was a current methamphetamine user; and on prior occasions was under the influence of methamphetamine while the

2

children were in his care.  The juvenile court found:  F.G. and Noel were each a presumed father of the child; "it would be detrimental" to the child if only one of the two men were found to be a presumed father; Noel was the offending parent under the petition; and F.G. is non-offending parent.

On August 7, 2014, the child was declared a dependent of the juvenile court. N.T., Jr. and D.T. were also declared dependents of the court.  They were placed in Noel's home and the mother was granted reunification services.  The child was removed from mother's custody and placed in F.G.'s home.  Release of the child to F.G. was conditioned upon the two of them residing with the paternal grandmother.  The juvenile court ruled:  "I've confirmed that [F.G.] is residing with the paternal grandmother.  And the release is conditioned on [F.G.] continuing to reside with the paternal grandmother who appears to really have that child's best interest at heart. . . ."  F.G. requested that the juvenile court terminate jurisdiction with a family law order giving him sole legal and physical custody and monitored visits for Noel and mother.  F.G.'s request that jurisdiction be terminated was denied.  The juvenile court stated, "I'm not closing the case out as requested by [F.G.] as I do feel this child will benefit from services to be provided to him in keeping with minors' counsel's argument."  Later during the disposition hearing, the juvenile court ruled:  "I'm rejecting [F.G.'s] request to terminate jurisdiction.  I do not feel that would be in the best interest of the child. . . .  [¶]  I do see this as a somewhat fluid situation. . . .  [The child] should be offered services.  I'm going to direct the department to provide individual counseling for that child based on this family's dynamics."

The department was ordered to provide services for the child, including individual counseling and an assessment for play therapy.  Also, the department was ordered to provide the mother with enhancement services, including a drug program, hands-on parenting instruction and individual counseling.  Both presumed fathers were ordered to participate in parenting counseling.  The mother was ordered to participate in drug counseling, parenting classes and individual therapy.  Noel was granted unmonitored visits with the child.  The mother was granted monitored visits.  The matter was

3

continued for a review hearing in six months.

## III. FACTUAL BACKGROUND

For one month after the child's birth, F.G. and the mother resided with the youngster. Thereafter, the mother moved out of the home with the child and F.G. visited the youngster. The paternal grandmother picked up the child for the visits. This was necessary because the mother and F.G. no longer spoke to one another. The mother and the child began living with Noel when the youngster was three months old. They lived together as a family. Noel did not have a history of narcotics abuse and was not a current drug user. Noel worked and also provided care for the child while mother was at work. According to a social worker's report: "[Noel] stated that he has known the child . . . since he was only about a month old and stated that he sees him as his son. [Noel] stated that he loves the child, . . . and . . . it has been difficult not having him around the house." A great many people, including family members and friends, knew the child as Noel's son. The child referred to Noel as "'Papi.'" The mother did not allow F.G. access to the child after October 2013. This was because she believed F.G.'s family had made a false child abuse referral.

The mother did not recognize the child had asthma and failed to obtain medical attention when he had an asthmatic episode in October 2012. The paternal grandmother obtained medical treatment for the child in the emergency room. When the child was placed with F.G. after the detention hearing, they lived in the paternal grandmother's home. Also residing there was F.G.'s girlfriend and her son.

F.G. acknowledged not having a good relationship with Noel or the mother. F.G. suspected Noel used drugs. While living in F.G.'s home after the detention hearing, the child did not have consistent visits with mother. The child cried when it came time for visits with Noel to end. There was testimony concerning the relationship between the child and F.G. The mother testified, "I believe he knows that's his real dad, biology dad, but he doesn't call him 'Dad.'" According to the paternal grandmother, the child refers

4

to F.G. as "Papi" which means dad or father.  F.G. suffered from kidney failure and required a transplant.  The child was healthy and had no medical issues.  The child was too shy to speak with the social worker, Lydia Larza.

## IV.  DISCUSSION

### A.  Presumed Father Findings

Family Code, section 7611 provides:  "A person is presumed to be the natural parent of a child if . . .  [¶]  . . .  [¶]  (d)  The presumed parent receives the child into his or her home and openly holds out the child as his or her natural child."  (See *Jason P. v. Danielle S.* (2014) 226 Cal.App.4th 167, 177-179.)  Further, Family Code section 7612 provides:  "(b)  If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section 7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls.  [¶]  (c)  In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child.  In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.  A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."  Family Code section 7610, subdivision (a), which is adverted to in Family Code section 7612, provides:  "The parent and child relationship may be established as follows:  [¶]  (a)  Between a child and the natural parent, it may be established by proof of having given birth to the child, or under this part."  (See *R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 774-776; *In re D.S.* (2014) 230 Cal.App.4th 1238, 1240.)  We review presumed parent findings for substantial evidence.  (*Adoption of Baby*

5

*Boy W.* (2014) 232 Cal.App.4th 438, 452-453; *In re D.S.*, *supra*, 230 Cal.App.4th at pp. 1244-1245.)

In enacting Family Code, section 7612, subdivision (c), the Legislature found: "(a)  Most children have two parents, but in rare cases, children have more than two people who are that child's parent in every way.  Separating a child from a parent has a devastating psychological and emotional impact on the child, and courts must have the power to protect children from this harm.  [¶]  (b)  The purpose of this bill is to abrogate *In re M.C.* (2011) 195 Cal.App.4th 197 insofar as it held that where there are more than two people who have a claim to parentage under the Uniform Parentage Act, courts are prohibited from recognizing more than two of these people as the parents of a child, regardless of the circumstances.  [¶]  (c)  This bill does not change any of the requirements for establishing a claim to parentage under the Uniform Parentage Act.  It only clarifies that where more than two people have claims to parentage, the court may, if it would otherwise be detrimental to the child, recognize that the child has more than two parents.  [¶]  (d)  It is the intent of the Legislature that this bill will only apply in the rare case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents."  (Stats. 2013, ch. 564, §1.)

Here, pursuant to Family Code 7612, subdivision (b), the juvenile court weighed: the risk F.G. and Noel posed to the child; the length of time the child had spent with each; and how actively involved each had been in the child's life.  The juvenile court found neither presumption outweighed the other.  The juvenile court's determination under Family Code 7612, subdivision (c) that recognizing only one father would be detrimental to the child was supported by substantial evidence.  There is no challenge to the finding F.G. was the child's biological parent.  The child knew both men as a father.  And the child called each of them, "Papi."  Noel, with whom the child had a long and close relationship, provided care and support for most of the youngster's life.  Thus, Noel fulfilled the child's physical and psychological needs for care and affection for a substantial period of time.  (Fam. Code, § 7612, subd. (c).)  The fact the child cried at the

conclusion of visits with Noel indicates the relationship was important to the youngster. The foregoing is evidence Noel was the child's parent in every way. (Stats. 2013, ch. 564.) Noel did not have a good relationship with F.G. It is reasonable to infer the antagonism developed because F.G. suspected Noel abused drugs. This antagonism created a risk F.G. would deprive the child of regular contact with Noel. As noted, Noel and the child had a close and important parental relationship. Substantial evidence supports the juvenile court's presumed father's findings.

### B. Order Continuing Juvenile Court Jurisdiction

F.G., who has custody of the child, contends the order continuing juvenile court jurisdiction is not supported by substantial evidence. F.G. argues there is no need for ongoing supervision. We disagree with the contention.

Welfare and Institutions Code, section 361.2 provides: "(a) When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child. . . . [¶] (b) If the court places the child with that parent it may do any of the following: [¶] (1) Order that the parent become legal and physical custodian of the child. The court may also provide reasonable visitation by the noncustodial parent. The court shall then terminate its jurisdiction over the child. The custody order shall continue unless modified by a subsequent order of the superior court. The order of the juvenile court shall be filed in any domestic relation proceeding between the parents. [¶] (2) Order that the parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months. In determining whether to take the action described in this paragraph, the court shall consider any concerns that have been raised

7

by the child's current caregiver regarding the parent. After the social worker conducts the home visit and files his or her report with the court, the court may then take the action described in paragraph (1), (3), or this paragraph. However, nothing in this paragraph shall be interpreted to imply that the court is required to take the action described in this paragraph as a prerequisite to the court taking the action described in either paragraph (1) or (3). [¶] (3) Order that the parent assume custody subject to the supervision of the juvenile court. In that case the court may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child. [¶] (c) The court shall make a finding either in writing or on the record of the basis for its determination under subdivisions (a) and (b)." We review the juvenile court's determination in this regard for an abuse of discretion. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104; see *In re Corrine W.* (2009) 45 Cal.4th 522, 532; *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652.)

When deciding whether to terminate jurisdiction over a child placed in the home of a noncustodial parent, the juvenile court must determine whether ongoing supervision of the youngster is necessary. (Welf. & Inst. Code, § 361.2, subd. (b)(3); *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129; see *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1451.) The juvenile court did not abuse its discretion in ruling that the child's best interest required ongoing supervision. The child's circumstances had undergone a radical change in the preceding four months. The child lived in a new household with F.G. The child had not seen F.G. in a year. In addition, the child was living with a stepmother and paternal half-sibling. The child was separated from the half-sibling. Further, the child had resided for over three years with the mother and Noel. There is evidence Noel had provided the child's day-to-day care for nearly the youngster's entire life. Noel had custody of the child's maternal half-siblings. The child had been parented by a mother

8

whose drug use rendered her incapable of providing proper care and supervision. There was conflict between the families in the child's life. The mother and F.G. did not speak to one another. Also, the child was not provided with consistent contact with mother. F.G. did not trust Noel. The social worker, Ms. Larza, attempted to interview the child concerning his emotional well-being and wishes. The child was unable to express a perspective on his possible placement because, in part, he was too shy to speak. F.G. and Noel needed services to become better parents and the child required therapy. Without abusing its discretion, the juvenile court could reasonably find the circumstances demonstrate the child's best interest required a period of court supervision in order to: obtain more information; monitor the child's welfare in F.G.'s home; evaluate the parties' progress in treatment; examine and potentially resolve the conflict between the families; insure the child was able to maintain a relationship with mother and Noel; and determine custody of the child. The juvenile court did not abuse its discretion in concluding the child's welfare required continuing supervision for six months.

## IV. DISPOSITION

The judgment and orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

GOODMAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.