Filed 9/10/15  In re T.W. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re T.W., a Person Coming Under the Juvenile Court Law. | B261006 (Los Angeles County Super. Ct. No. DK08204) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.W.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

# I.  INTRODUCTION

C.W., the presumed father, appeals from a December 12, 2014 judgment and orders declaring the child, T.W., a juvenile court dependent pursuant to Welfare and Institutions Code section 300.[1]  The child is the six-week old son of his mother, N.B. The father contends substantial evidence does not support the jurisdictional finding concerning his history of substance abuse.  In addition, the father challenges the dispositional order.  The dispositional order removed the child from the father's custody. Concluding the jurisdictional finding is supported by substantial evidence and the dispositional order was not an abuse of discretion, we affirm.

# II.  FACTUAL AND PROCEDURAL HISTORY

The child was placed on a hospital hold at birth and detained from parental custody, because he was born with drugs in his system.  The father and the mother did not live together.  Previously, the father had lost custody of his three older children ("half-siblings") from a previous relationship.  From 2001 to 2004, the father's son, C., was a dependent of the court.  The dependency order resulted from the father's domestic violence in the presence of C. on numerous occasions.  C. was returned to the father's custody but detained again in 2007.  The half-siblings were dependents of the court from 2007 to 2009 based on sustained allegations, among others, that the father's conduct placed them at substantial risk of serious physical harm.  The juvenile court previously found that:  while the half-siblings were in his sole care and custody, the father engaged in criminal activity involving theft, which resulted in his arrest for burglary; the father had a history of abusing marijuana and was arrested while in possession of drug paraphernalia; and the father had a history of engaging in domestic violence in the

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

presence of the half-siblings. In the prior dependency proceeding, the father stated he completed parenting, anger management counseling and domestic violence classes. However, he failed to reunify with the half-siblings and a permanent plan was ordered. And a permanent restraining order was issued against the father. The permanent restraining order was issued after C. was subsequently reunified with his mother.

The father had a long record of criminal convictions, going back to 1980. In 1980, the father was convicted of possession of a dangerous weapon and carrying a concealed weapon. (Former Pen. Code, §§ 12020, 12025.) In 1984, the father was convicted of auto theft. (Veh. Code, § 10851.) Later in 1984, defendant was convicted of felony auto theft. (Veh. Code, § 10851.) In 1987, the father was convicted of battery on emergency personnel. (Pen. Code, § 243, subd. (c).) In 1987, the father was convicted of first degree burglary and auto theft and sentenced to prison. (Pen. Code, § 459; Veh. Code, § 10851.) In 2002, the father was convicted of criminal threats. (Pen. Code, § 422.) Also in 2002, the father was convicted of domestic violence. (Pen. Code, § 273.5, subd. (a).) In 2007, the father was convicted of driving with a suspended license. (Veh. Code, § 14601.1, subd. (a).) Also in 2007, the father was convicted of petty theft. (Pen. Code, § 484, subd. (a).) Moreover, in 2007, the father was convicted of felony petty theft and sentenced to prison. (Pen. Code, §666.) In 2008, the father was convicted of second degree burglary and felony petty theft and sentenced to prison. (Pen. Code, §§ 459, 666.) In 2009, the father was convicted of grand theft from the person and sentenced to prison. (Pen. Code, § 487, subd. (c).) In 2010, the father was held on a violation of parole. In 2013, he was convicted of: driving under the influence of alcohol (Veh. Code § 23152, subd. (b)); narcotics possession (Health & Saf. § 11350, subd. (a)); and resisting arrest (Pen. Code, § 148, subd. (a)(1)).

The father lived in the home of a cousin, F.. Also living in the home were F.'s two children. And the two children who were under a permanent plan of legal guardianship resided in the home along with F.'s two children. The home was clean and safe. However, Pearl Rodriguez, a Department of Children and Family Services (the department) dependency investigator explained there were legal problems with placing

3

the child with the father in F.'s home. According to Ms. Rodriguez, releasing the child to the father in F.'s home would violate the requirements of the American Safe Families Act of 1997. (42 U.S.C. § 670 et seq.) This would jeopardize the permanent placement/legal guardianship for the two children currently under a guardianship. That permanent plan required that the home comply with American Safe Families Act. The permanent plan for the two children currently under a guardianship would be unlawful.

The father admitted he has a history of using and selling drugs, but he stated he had been clean for 10 years and was currently undergoing drug testing. The drug testing was conducted by the father's probation officer. The father's claim that he was drug free was contradicted by the statements of a maternal aunt. The maternal aunt explained that the father was currently using crack cocaine. The mother, who gave birth of the child while under the influence of drugs, regularly visited the father.

Without objection, the juvenile court took judicial notice of the sustained petitions of 2001 and 2007. No drug test results were presented at the hearing. The matter was submitted based upon the reports on file. The child was declared a dependent of the court based on sustained allegations under section 300, subdivision (b). The juvenile court found that the child was born suffering from cocaine dependence. Further, the juvenile court found that the mother had a seven-year history of substance abuse. Finally, as to the father, the juvenile court found: "The child['s] father . . . has a history of substance abuse including marijuana, which renders the father incapable of providing regular care of the child. The child is of such a young age requiring constant care and supervision and the father's illicit drug use interferes with providing regular care and supervision of the child. The child's half siblings . . . are receiving Permanent Placement Services due to the father's substance abuse. The father has a history of criminal conviction for [drug possession]. Such illicit drug use by the father endangers the child's physical health and safety, placing the child at risk of physical harm, damage and danger."

The juvenile court took custody from the mother. The father asked for custody of the child. The juvenile court found that the child's release to the father in F.'s home would jeopardize the funding for the other children in the home. Further, the juvenile

4

court found the father did not have another home to reside in. The juvenile court stated, "Under the circumstances, the court has to find that it would be detrimental to the child to be returned to the father . . . and there are no reasonable means to keep the child safe without removal." The juvenile court ordered reunification services be provided to the parents. The father's plan required him to complete eight consecutive random drug tests and a parenting program. The department was ordered to assess the father's home. Also, the department was vested with the discretion to release the child to the father. The juvenile court stated: "If [the father] is testing clean and abiding by his programs and living in an appropriate home, the child can be placed with the father. The department can walk it on for [a home-of-parent] father order." Later in the hearing, the juvenile court stated: "If he's testing clean, I want the department to strongly consider placement with the father and exercise that discretion. The discretion is not to be unreasonably withheld. [¶] . . . That's the best I can do for you at this time with the information that I have." Further, the juvenile court noted, "Go ahead and find someplace else and get the brand new year started with a new apartment, and they'll check it out."

## III. DISCUSSION

### A. The Sustained Allegations

The father contends substantial evidence does not support the finding under section 300, subdivision (b) that his history of substance abuse places T. at a substantial current risk of serious harm. This contention is frivolous given our deferential standard of review. We apply the following standard of review described by our Supreme Court: "In reviewing the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are

5

the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]."' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (See *In re Angelia P.* (1981) 28 Cal.3d 908, 924 .)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Section 300, subdivision (b), provides in part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or . . . by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. . . . Thus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' [Citation.]" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824; see *In re Jennifer P.* (1985) 174 Cal.App.3d 322, 326.) However, in determining whether there is some reason to believe misconduct may continue in the future, the juvenile court may consider past events: "[T]he court may . . . consider past events when determining whether a child presently needs the juvenile court's protection. . . . A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child,

wherever they occur.' [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133; see *In*

6

*re Hadley B.* (2007) 148 Cal.App.4th 1041, 1050.)

The contention that substantial evidence does not support the judgment is meritless. It is undisputed the father has an unrelenting history of substance abuse and criminal conduct. Further, there is no dispute that the child is of such a young age that he requires constant care and supervision. More importantly, there is evidence from the maternal aunt that the father is currently using crack cocaine. Accordingly, *substantial evidence* supports the juvenile court's jurisdiction in any argument the contrary has no factual basis..

### B. The Order Denying the Father Custody

The father challenges the custody order. The father's argument is as follows: "Since . . . no substantial evidence existed to support the exercise of jurisdiction regarding his conduct under a preponderance of the evidence standard, it follows that the dispositional findings and orders that [the child] would be in substantial danger in [the] father's custody is unsupportable as well." This contention has no merit.

Welfare and Institutions Code, section 361.2, subdivision (a) provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." The Court of Appeal has held: "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. . . . The court's determination in this regard will not be reversed absent a clear abuse of discretion." (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104; accord, *In re Corrine W.* (2009) 45 Cal.4th 522, 532; *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652.)

7

The juvenile court's detriment finding is supported by substantial evidence. The maternal aunt explained that the father is currently using crack cocaine. Such conduct is consistent with the father's prior criminality. Moreover, there is evidence father's residence in F.'s home jeopardized federal funding for other four children. These were children F. was responsible for. And the father had no other place to live. This state of affairs evidences a risk of homelessness, which would be detrimental to this very vulnerable young child. No abuse of discretion occurred.

## IV.  DISPOSITION

The judgment and orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

KRIEGLER, J.

8