Filed 10/16/24  In re E.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re E.J., a Person Coming Under the Juvenile Court Law. | C100760 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20230000435) |
| Plaintiff and Respondent, | |
| v. | |
| S.M., | |
| Defendant and Appellant. | |

Appellant S.M., biological father of minor E.J., appeals from the juvenile court's judgment at disposition adjudging the minor a dependent and removing him from parental custody.  (Welf. & Inst. Code,[1] §§ 361, 395.)  He contends the requirement that he participate in substance abuse services and testing as part of his reunification case plan was an abuse of discretion.  We affirm.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

In November 2023, the San Joaquin County Human Services Agency (Agency) filed a petition on behalf of newborn minor E.J. pursuant to section 300, subdivisions (b)(1) and (g).[2] The petition alleged the minor was at risk due to mother having tested positive for amphetamines at the time of the minor's birth, mother's ongoing abuse of methamphetamine and marijuana, father's history of substance abuse from which he had failed or refused to rehabilitate, father's failure to protect the minor from mother's known substance abuse, and father being homeless and living at his jobsite.

Mother reported being a daily user of methamphetamine and admitted having used both methamphetamine and marijuana shortly before the minor's birth. Mother reported a history of domestic violence with father in which she has hit him. She also reported that father smoked crack cocaine only on the weekends because he worked during the week. She had been living with father when she became pregnant, but father had to move out in August, and she did not currently live with him. She did occasionally stay at a motel with him. Mother did not receive prenatal care. Mother admitted she knew the negative effects drug exposure during pregnancy could have on infants in utero but that it was harder than she expected to stop using.

Father was present at the hospital after the minor's birth. The social worker asked if he was aware that mother was using drugs. Father confirmed that he knew but stated he could not control her actions and did not agree with her drug use. He denied using drugs himself. When informed there had been a report that he smokes crack cocaine on the weekends, father said that was not true, and that he had completed drug treatment in 2019 with the Salvation Army. Father stated he was unsure why someone would say he used crack cocaine on weekends. Mother was present but remained quiet and did not respond.

_____

[2] The petition was also filed on behalf of the minor's older half sibling who is not a subject of this appeal.

2

When mother was informed that she would need to attend a substance abuse treatment program and it would likely be an inpatient program, mother became emotional. Father attempted to calm mother, advising her that she needed to make an effort to contact the treatment centers and show the effort.

The minor was ordered detained, and mother was ordered to drug court. Mother later entered a residential treatment program. In January 2024, father's paternity was confirmed and he was declared the minor's biological father. Father requested visitation, including joint visits with mother at the substance abuse treatment facility.

Mother submitted on jurisdiction and disposition and the matter was continued. At the February 2024 continued jurisdictional/dispositional hearing, father's counsel informed the court that father was willing to take a drug test that day and was willing to wear a drug patch for testing purposes. Father had already completed a drug program and did not want to have to participate in a year of drug court. The court explained that if father was clean and the drug court determined that all he needed to do was wear a patch or random test for a year, then that is what the juvenile court would order. Father's counsel argued that it would be redundant for father to go through the drug court process again, which was the reason father was willing to wear a patch to demonstrate to the court that he did not have a substance abuse problem. The court explained that wearing a patch was monitored by drug court. The court set a contested hearing at father's request and indicated that father could test that day if he wanted to do so and instructed that a call be made to drug court to arrange for father to test. There is no evidence in the record that father tested that day.

At the March 2024 contested hearing, the court was informed that father and the Agency had reached a resolution on jurisdiction whereby the Agency agreed to delete the allegation that father had failed and/or refused to rehabilitate from his substance abuse problem and replace it with "he has a history of substance abuse, which was including crack cocaine" and added that, "while at the hospital, [father] indicated that he could not control the mother, but reported that he encouraged her to enter a treatment program." With that

3

modification, father submitted on jurisdiction and the court found that a factual basis existed and that the allegations of the petition were true.

As to disposition, father again argued against the inclusion of drug court in his case plan. Father argued his drug history was remote, that he had successfully finished a treatment program in 2019, and there was no evidence of a current substance abuse problem.

The Agency and minor's counsel continued to request father be ordered to drug court. Although the Agency had agreed to modify the jurisdictional allegation, the supplemental disposition report indicated the Agency was concerned that father has a history of substance abuse from which he has failed or refused to rehabilitate, that he is currently abusing crack cocaine, and that his substance abuse impairs his ability to care for the minor. The Agency's report again noted that mother had reported that father smoked crack cocaine on the weekends. The Agency recommended father be provided with reunification services to include participation in substance abuse treatment services, parenting education, and counseling. The proposed reunification case plan also included compliance with court orders, compliance with drug court and random testing, and maintaining stable housing.

Father, who is in his 50's, stated that he began using drugs socially at a young age, but it eventually became a habit. He reported participating in various treatment programs including "Delancey Street in 1999 and the Salvation Army in 2018." He reported his longest period of sobriety was five years and denied any current drug use. He also reported that his previous drug use hindered his involvement in the lives of his three older children. Father stated that church and recovery programs aided him in achieving sobriety. He reported being employed and that he had recently obtained an apartment and would be moving in soon. He also stated he would allow mother to reside with him after she completed residential treatment.

The Salvation Army treatment program reported that father had entered their program on July 29, 2019, and completed phase one on January 29, 2020. He attended classes and completed all the required courses in phase one. Father then did phase two of the program

4

in Lodi from January 29, 2020, to July 8, 2020, and then moved into the transitional apartments until November 4, 2020. The intake coordinator believed father to be a productive member of society.

The juvenile court found there to be a nexus between the conditions leading to the dependency and/or the current risk of harm to the minor and the inclusion of drug court in father's case plan. It noted that clean and sober people do not usually hang around chronic drug users but that it would give father the benefit of the doubt by ordering him to go across the street and test "right now." If father tested negative, it would consider not ordering drug court. But if father refused to test, it would consider it a presumptive positive test and order drug court, if it decided to order reunification services. Father objected to having to test because he had proof he "completed the program in 2019." The court responded that proof of a program does not mean he is not using now. The court took a recess for father to test.

When the hearing resumed, all the parties were present except father. The drug court representatives reported that father had walked out, saying he was not going to test. The juvenile court adjudged the minor a dependent child of the court and ordered reunification services for both parents including drug court for father.

Father appeals. This matter was fully briefed in this court on July 30, 2024.

DISCUSSION

Father contends the juvenile court abused its discretion in requiring him to participate in substance abuse services and testing, specifically drug court, as part of his case plan because there was no evidence that substance abuse continued to be a problem for him. We find no abuse of discretion.

The overarching goal of dependency proceedings is to safeguard the welfare of California's children; family preservation is the first priority once proceedings have commenced. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.) At the dispositional hearing, the juvenile court must order services for minors and their parents to facilitate reunification of the family, unless it makes a finding such services need not be provided. (§ 361.5, subd.

5

(a); Cal. Rules of Court, rule 5.695(g).)  Reunification services are typically understood as a benefit provided to parents, because such services enable them to demonstrate parental fitness so as to regain custody of their dependent children.  (*Nolan W.*, at p. 1228.)

Under section 362, subdivision (d):  "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . ."  The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion dispositional orders in accord with this discretion.  (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1005.)  We will not reverse the juvenile court's determination in this regard absent a clear abuse of discretion.  (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

This is a case where both parents have a history of substance abuse and in which the minor came to the attention of the Agency *because* of that substance abuse.  Father, who started using in his youth and is now in his 50's, has a long history of substance abuse.  The longest father even claimed to have been sober was five years, and it is not apparent from his history when that five-year period occurred.  The court did not believe that father, who has a very long and "serious drug problem," remained sober while living with someone who was using daily.  And while father argues there was no evidence that he was using drugs, there was.  Mother, who lived with father until a few months before the minor's birth and who continued to spend nights with him at a motel, reported father smoked crack cocaine on the weekends when he was not working.  While father disputes mother's statements, issues of fact and credibility are the province of the juvenile court.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Indeed, because father refused to drug test, the only evidence supporting father's claim that he was no longer using drugs was his completion of his latest substance abuse program.  As the juvenile court noted, however, participation, or even completion, of a substance abuse program does not establish current sobriety.  Indeed, father had been in

6

various substance abuse programs over the years, including Delancey Street in 1999, and had not maintained sobriety thereafter. He reported he completed the Salvation Army program (for what appears to be at least a second time he participated in the program) in 2019. But his report conflicts with the report of the intake coordinator, who reported father did not enter the program until the end of July 2019, did not complete phase one until the end of January 2020, did not complete phase two until July 2020, and lived in the transitional apartments until November 2020. And the intake coordinator did not make representations about father's sobriety nor provide information about clean tests. The program confirmed only that father had "completed all the required courses" and "is a productive member of society."

The foregoing facts form a factual basis for the drug court order, even though the Agency had agreed to remove the jurisdictional allegations in the section 300 petition based on father's history of substance abuse from which he had failed or refused to rehabilitate. (See *In re Christopher H.*, *supra*, 50 Cal.App.4th at pp. 1007-1008.) "The problem the court is addressing need not be described in the petition. [Citation.] There need only be a nexus between the services ordered and the conditions that gave rise to the finding that the [minor] come[s] within section 300." (*In re A.F.* (2024) 102 Cal.App.5th 778, 782.) Due to father's long history of substance abuse, repeated but failed efforts at sobriety, relative short period of claimed sobriety, inaccurate report of his most recent "successful" completion of a treatment program, continued cohabitation with a daily drug user after completion of that program, and mother's report that father continued to use drugs on weekends when not working, we find no abuse of discretion in the court's inclusion of drug court in father's case plan.

Father relies on *In re S.F.* (2023) 91 Cal.App.5th 696 to support his contention that the inclusion of drug court in his reunification plan was an abuse of discretion. In *In re S.F*, the minor was detained after the mother was released from a psychiatric hold and violated a safety plan made to protect the 11-month-old minor. (*Id*. at p. 703.) The mother was also

abusing controlled substances. (*Ibid*.) At the time of the detention, the father resided in New York with his sister. The father admitted to previous drug use but had participated in drug treatment and reported *without contradiction* that he had been sober for two years. (*Id*. at pp. 703, 717-718.) He had moved back to New York to remove himself from the drug environment in the San Francisco Bay Area. (*Id*. at p. 704.) There was no evidence that he had facilitated the mother's drug use while she was caring for their child. They had been in a relationship during her pregnancy, and she had been clean for nine months. (*Ibid*.) The mother confirmed she had not used drugs with father since " 'way before' " she became pregnant. (*Id*. at p. 707.) A substance abuse assessment confirmed that the father did not need treatment, and a drug test was negative. (*Id*. at p. 706.) Nonetheless, the juvenile court sustained a jurisdictional allegation based on the father's previous substance abuse and imposed several reunification requirements, including that the father submit to random drug testing and undergo a substance abuse assessment and follow its recommended treatment. (*Id*. at p. 711.) The appellate court held that the evidence did not support a jurisdictional allegation based on the father's substance abuse. (*Id*. at pp. 717-718, 724-726.) There had been no evidence that the father had lied about his sobriety or that he had a current substance abuse problem that created a risk to the minor. (*Id*. at pp. 717-718, 726.) Having reversed the jurisdictional findings and orders for lack of evidence to support jurisdiction based on father's alleged substance abuse, the appellate court reversed the dispositional orders requiring drug testing and substance abuse treatment as having no nexus to conditions that led to the court's jurisdiction. (*Id*. at pp. 724-726.)

The holding in *In re S.F.* does not, however, prohibit the juvenile court here from including drug court in father's case plan. Father's history of substance abuse is a sustained jurisdictional allegation. Unlike *In re S.F.*, there *was* evidence father continued to use drugs and there was evidence he was present and aware of mother's substance abuse during her pregnancy. Unlike *In re S.F.*, father did not participate in a substance abuse assessment or provide a clean drug test.

" '[A] reunification plan formulated to correct certain parental deficiencies need not *necessarily* address other types of conduct, equally deleterious to the well-being of a child, but which had not arisen at the time the original plan was formulated.' [Citation.] However, when the court is aware of other deficiencies that impede the parent's ability to reunify with [her] child, the court may address them in the reunification plan." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008.) "The juvenile court has authority to require a parent to submit to substance abuse treatment as part of a reunification plan as long as the treatment is designed to address a problem that prevents the child's safe return to parental custody." (*In re Nolan W.*, *supra*, 45 Cal.4th at p. 1229.)

DISPOSITION

The judgment is affirmed.


    /s/
    MESIWALA, J.


We concur:



 /s/
DUARTE, Acting P. J.



 /s/
KRAUSE, J.