Filed 8/28/15  Donna E. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DONNA E., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F071668 <br><br> (Super. Ct. No. 03CEJ300061-5) <br><br><br> **OPINION** |

-ooOoo-

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Kimberly J. Nystrom-Geist, Judge.

Katherine Fogarty for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Detjen, J. and Franson, J.

Donna E. seeks extraordinary writ relief from the juvenile court's May 22, 2015 dispositional order removing her then 11-year-old son Johnny and eight-year-old daughter Jayden from her custody and setting a Welfare and Institutions Code section 366.26 hearing[1] to implement a permanent plan of legal guardianship. Donna contends there was insufficient evidence to support the removal order. We deny the petition.

**PROCEDURAL AND FACTUAL SUMMARY**

On December 3, 2014, the Fresno County Department of Social Services (department) received a call from the Fresno Rescue Mission (Mission) that Donna and Jose, Donna's boyfriend of 18 years, were there with their then 11-year-old son, Johnny, and eight-year-old daughter, Jayden, and that Jayden was throwing up and smelled like "'poop.'" Donna said Jayden had been throwing up and soiling herself for two days. The family was homeless and had been at the Mission on November 28, 2014, and were provided clean clothing for the children. The family left because there was no room for them and they moved from place to place over the next five days, returning to the Mission twice during that time. They were offered resources at the Mission but refused them. When the family returned to the Mission on December 3, 2014, the children were wearing the clothes they were given five days before and had urinated and defecated in them because they did not have access to bathrooms.

Jose and Donna stated they had been homeless for approximately one month and the children had not attended school since Thanksgiving. They also disclosed that they used methamphetamine. Donna used the drug a week before and Jose a week before that. Jose said his use was a relapse and he had not used methamphetamine since 2003.

Emergency response social worker Kim Ramirez contacted the maternal grandmother (the grandmother) to see if she could take care of the children. The

---

[1] All further references are to the Welfare and Institutions Code unless otherwise indicated.

grandmother said she could not, explaining that she was raising Donna's older four children. The grandmother said Donna had a longstanding drug problem, dating back to her teenage years. She said she would contact other family members to see if they could take the children.

On December 4, 2014, Ramirez met with Donna, Jose, their 16-year-old daughter, Monica, and Donna's sister, Shawn. Shawn was interested in taking custody of the children but Donna and Jose would not agree to it. Monica expressed concern for her siblings and recalled being removed from her parents at the age of four for the same reasons, "'[d]rugs, no place to stay, they couldn't take care of us.'" Child welfare records revealed that in 2003, Monica and her siblings, then ranging in age from three to ten-years of age, were taken into protective custody because Donna and Jose were arrested for possessing drug paraphernalia in the home. In addition, the home was filthy and the children were left unattended. Donna and Jose were provided family reunification services, including substance abuse treatment, but did not comply. In 2005, the children were placed in legal guardianship with their grandmother.

During the meeting, Ramirez explained the department was concerned about Donna and Jose's pattern of homelessness, drug use, child neglect, and failure to follow through with services. However, Ramirez acknowledged the family also had strengths; the children were well-behaved, appeared bonded to their parents, and Donna and Jose had been accepted to the Mission's substance abuse program.

On December 4, 2014, Donna entered Rescue the Children, a ministry of the Mission, which offered residential treatment and core classes. Rescue the Children housed parents and their children. However, the staff told Donna that Johnny and Jayden could not live with her for at least one or two months. Ramirez agreed that Donna needed to work on herself first and Donna and Jose admitted the children were not safe in their care at that time.

3

The department filed a dependency petition on Johnny and Jayden's behalf, alleging Donna and Jose failed to provide for the children's basic needs and placed them at a substantial risk of harm or illness because of their drug use. (§ 300, subd. (b).) The department also alleged that Donna and Jose's neglect and failure to reunify with Johnny and Jayden's siblings placed Johnny and Jayden at a similar risk of neglect. (§ 300, subd. (j).)

On December 9, 2014, the juvenile court detained Johnny and Jayden pursuant to the dependency petition and set the matter for further proceedings. The court did not offer Donna and Jose any reunification services.

In January 2015, Johnny and Jayden were placed with their aunt Shawn and her husband, who were willing to become their legal guardians.

Over the ensuing months, the department filed reports recommending the juvenile court sustain the allegations in the petition and remove Johnny and Jayden from Donna and Jose's custody. The department also recommended the court deny Donna and Jose reunification services under section 361.5, subdivision (b)(10) and (13) for not making reasonable efforts to treat their drug problem after their reunification services were terminated in the siblings' case.

In its dispositional report, the department provided a more detailed history of Donna and Jose's drug abuse. Donna first used drugs at the age of 16, sometime in 1987 to 1988, when she ingested phencyclidine (PCP). She thereafter used amphetamine, cannabis and hallucinogens. Jose had a history of drug possession dating back to 1986. In 2003, Donna and Jose were referred for drug treatment. Donna participated in intensive outpatient treatment but completed only two of the required three phases. The juvenile court terminated their reunification services and they moved to Colorado. Monica said she suspected Jose was under the influence of drugs at times when she spoke to him on the telephone while he lived in Colorado. In September 2013, Donna returned to California and was arrested for being under the influence of a controlled substance.

She admitted using methamphetamine in June of 2014, and a week before Johnny and Jayden were removed in December 2014. Jose admitted using methamphetamine two weeks before their removal.

The department also provided further detail about the family's circumstances in the months leading up to Johnny and Jayden's removal in December 2014. In August 2014, the department received a report that the family had been evicted from their home and had no food or water. They had been using governmental assistance but allowed it to lapse. The department staff tried to help Donna and Jose reinstate their financial assistance but they left with the children. The department lost track of them until it received the call from the Mission in December 2014.

Donna and Jose challenged the department's recommendations and the juvenile court conducted a contested jurisdictional/dispositional hearing (contested hearing) over several sessions in May 2015. In the meantime, Deb Weiler, Donna's case manager at Rescue the Children, submitted a letter on Donna's behalf stating that Donna was attending recovery meetings, 12-step, addiction awareness, and relapse prevention classes, and working on her high school diploma. Weiler stated Donna had achieved a lot of growth but lacked focus and realized she had a lot more work to do. Weiler stated the children could live with Donna at their facility, which was secure and fully staffed.

On May 18, 2015, the juvenile court convened the contested hearing. Donna and Jose took the position that the juvenile court should place Johnny and Jayden with Donna at Rescue the Children and provide her family maintenance services. Weiler testified that Donna completed the parenting program at Rescue the Children and was repeating it because Weiler believed she could get more out of it a second time. In addition, Donna was participating in anger management and 12-step programs and had a sponsor. Donna consistently tested negative for drugs and demonstrated a commitment to her sobriety.

Weiler further testified there was housing available for Donna and the children. There were seven to eight staff members present at all times and all the staff were mandated reporters. The staff made sure the children attended school.

Donna testified and acknowledged she had a substance abuse problem that was harming her children. However, she was getting the help she needed, and believed she was ready to resume custody of the children. She said she had newfound hope and felt secure in her sobriety. She planned to prevent relapse by going to church, being accountable, and maintaining a sponsor. She said the children were generally loving toward her but had pulled back from her recently. They both asked to live with her at the Mission.

Social worker Luisa Garay Morfin testified she had observed the bond between Donna and Jose and the children. She did not believe the children could be safely placed with Donna and Jose because Donna and Jose were still in drug treatment. She said their aunt was meeting their physical, educational, and medical needs. She did not believe providing Donna and Jose reunification services would be in the children's best interests because of Donna and Jose's chronic substance abuse and failure to benefit from services.

Jose testified he was drug free from 2003 until two weeks before Johnny and Jayden were taken into protective custody. Since entering the Mission, his drug tests had all been negative. He asked the court to place the children with Donna and continue the family therapy for them.

The juvenile court continued the contested hearing near the completion of Jose's testimony and reconvened on May 20, 2015. Following Jose's testimony and argument, the juvenile court continued the hearing to issue its ruling.

On May 22, 2015, the juvenile court sustained the jurisdictional findings, ordered Johnny and Jayden removed from Donna and Jose's custody, denied them reunification services as recommended, and set a section 366.26 hearing.

In ruling, the juvenile court set forth a detailed explanation for its reasoning. With respect to its decision to remove Johnny and Jayden, the court stated it thoughtfully considered placing the children with Donna at Rescue the Children as an alternative but found that it would present a substantial danger to their physical and emotional well-being and safety. The court described the dire circumstances from which Johnny and Jayden were initially removed, stating, "[They] were homeless without necessary medical care, not attending school[, and did] not have access to even the most basic sanitation." In addition, the court noted, both parents were using methamphetamine. The court believed the children had experienced "their first glimpse of stability" in the care of their aunt Shawn, observing that they were clean and attending school, wearing glasses, and enjoying an ongoing relationship with their siblings. To place the children with Donna, the court reasoned, would require removing them from a place of stability and placing them into an uncertain and precarious situation with Donna. Donna's success, the court stated, was not "a foregone conclusion" given her lengthy history of drug abuse and recent entry into treatment.

This petition ensued.[2]

## DISCUSSION

Donna contends the juvenile court's removal order was error, arguing it was not supported by clear and convincing evidence. More specifically, she contends that the juvenile court misapplied the law by assessing the harm the children would suffer if removed from their aunt Shawn rather than if placed with her at Rescue the Children. She further contends Rescue the Children presented a reasonable alternative to removal. We conclude that the juvenile court properly ordered Johnny and Jayden removed from Donna's custody.

---

[2] Jose did not file a writ petition.

7

Section 361, subdivision (c) governs the removal of a child from parental custody and provides, in relevant part:

> "A dependent child may not be taken from the physical custody of his or her parents ... with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence .... [¶] ... [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's ... physical custody." (§ 361, subd. (c)(1).)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion." (*In re Jose M*. (1988) 206 Cal.App.3d 1098, 1103-1104.) "A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Diamond H*. (2000) 82 Cal.App.4th 1127, 1136.)

On a challenge to the juvenile court's dispositional finding, we do not review the juvenile court's reasoning. (*In re A.A*. (2008) 167 Cal.App.4th 1292, 1313.) Rather, we review the evidence to determine whether substantial evidence supports it. We do so bearing in mind that the juvenile court's decision to order a child removed from parental custody must be supported by the heightened standard of clear and convincing evidence. (*In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1654.) Further, we view the evidence in deference to the juvenile court's determination and affirm the order even if there is evidence supporting a contrary conclusion. (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.) On the facts of this case, we conclude substantial evidence supports the juvenile court's removal order.

8

By the time Johnny and Jayden were taken into protective custody, they had suffered serious neglect in Donna's care and custody. They had endured prolonged transience, hunger and thirst, and been forced to void in clothing they were expected to wear. In addition, Jayden was sick and neither child was receiving proper medical care or regularly attending school. There is no question that the children were in substantial danger while in Donna's care up to that point.

The question is whether Donna would have posed a substantial danger to Johnny and Jayden if they had been placed in her care under the supervision of the staff at Rescue the Children. In other words, applying the statute, was placing the children with Donna at Rescue the Children an alternative to removal? Donna contends it was because she was maintaining her sobriety and progressing in her treatment. In addition, she points out the staff members were mandated reporters and would not allow the children to be neglected or abused. There are several problems, however, with Donna's argument. Donna's participation in Rescue the Children was purely voluntary. She could have left with the children at any time. Further, the situation which necessitated the children's removal was not an isolated one. Rather, it was a repeat of the situation in 2003 that required the removal of her four older children. Consequently, there was nothing to prevent Donna from repeating her pattern of drug abuse and subjecting Johnny and Jayden to serious neglect once again. Thus, placing the children with Donna at Rescue the Children would have indeed exposed them to substantial danger despite the safeguards present there. Therefore, it was not a reasonable alternative to removal.

We conclude substantial evidence supports the juvenile court's order removing Johnny and Jayden from Donna's custody and deny the writ.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.

9